1811.

*Philadelphia, Saturday, March 30.*

The UNITED STATES *against* VAUGHAN and others, garnishees of BIRD, SAVAGE, and BIRD.

Stock of the bank of the *United States,* which has been sold *bona fide,* and the certificate delivered to the purchaser with a power of attorney to transfer it on the books of the bank, is not liable to an attachment as the property of the vendor, although it is still standing in his name on the books of the bank, at the time of the attachment.

A chose in action, which has been equitably assigned, is not subject to attachment as the property of the assignor.

The plaintiff in a foreign attachment stands upon no better footing as to the thing attached, than his debtor, the defendant in the attachment.

35 394
137 148

3 B 394
. 32 SC ¹ 48

IN *April* 1803, the *United States* attached in the hands of the president directors and company of the bank of the United States, twenty-four shares of stock as the property of *Bird, Savage,* and *Bird, which then stood in their name* on the books of the bank; and by agreement of the bank, the *scire facias* against the present defendants, who were garnishees in another attachment between the same parties, was to be considered as having issued against the bank, and the right to the stock was to be tried under the plea of *nulla bona.*

Of these twenty-four shares, *ten* were claimed by *Anne,* dowager dutchess of *Cumberland,* under a sale by *Bird, Savage,* and *Bird,* on the 10th *January* 1794: *Five* were claimed by *Benjamin Tucker,* under a sale by *John Capper* on the 29th of *October* 1802, to whom a sale was alleged to have been made by *Bird, Savage,* and *Bird,* on the 9th *July* 1797; *one* was claimed by *John Capper* under the same sale of 9th *July* 1797; and *eight* still remained, as was said, the property of *Bird, Savage,* and *Bird.* These claims were by agreement tried under one issue.

On the trial of the cause before *Yeates* justice at a *Nisi Prius* in *July* last, the district attorney, (*Dallas*) having proved that *Bird, Savage,* and *Bird* stopped payment in *London* on the 9th of *December* 1802, at which time they were debtors of the *United States* for more than 120,000 dollars,—that the attachment was laid upon the stock on the 9th of *April* following, when it still stood in their names,—that the first application by *Tucker* to transfer the stock, was in *December* 1803, by *Capper* in *August* 1804, and by the dutchess of *Cumberland,* at a still later period,—the counsel of the respective claimants offered to prove, that it had been the course of business in relation to sales of this stock in *England,* for the person who sold it, to deliver the certificate to the vendee, together with a power of attorney from him in whose name the stock stood to a third person, (usually the assistant

cashier of the bank) authorizing him to transfer the same to some person in blank; and that by the delivery of the certificate and the blank power of attorney, the share passed from hand to hand, the power of attorney never being filled up, until it was forwarded to the *United States* for transfer. They also offered to prove, that as to the *ten* shares of the dutchess of *Cumberland,* she bought them in this way in 1794, when the certificate and blank power of attorney had been delivered to her; that *Tucker* had bought his *five* shares from *Capper* in *October* 1802, when the certificate and a blank power were delivered, in which his name was inserted in *May* 1803; and that *Capper* bought *one* share in *July* 1797, a certificate and blank power for which were delivered on the 5th *September* following.

To this evidence the district attorney objected, upon the ground, that according to the construction of the act incorporating the bank, and of the by-laws of the bank made in pursuance thereof, there should be proof of an assignment or transfer of the stock in question *at* the bank of the *United States,* by *Bird, Savage,* and *Bird,* either in person or by attorney, to change the property, so as to prevent its being attached by the *United States* as the property of *Bird, Savage,* and *Bird,* in whose name the same stood at the time of the attachment; and that the course of business ought not to be given in evidence for the purpose of affecting in any way such construction.

His honour however admitted it, reserving the point; and the cause then went to the jury, principally upon the *bona fides* of the alleged sales, as to which there was much testimony that is not material. The jury found for the dutchess of *Cumberland* as to her *ten* shares, and for the *United States* as to the *six* claimed by *Capper* and *Tucker,* and the *eight* unclaimed; and now cross motions were made for a new trial, by the district attorney as to the dutchess of *Cumberland's* shares upon the reserved point, and by the counsel of *Capper* and *Tucker* upon the merits. The argument upon the reserved point is alone material.

*Dallas* for the *United States.* My principle is, that the rights of *bona fide* creditors should prevail against the equit-

HARVARD LAW SCHOOL LIBRARY.

1811.

U. STATES
v.
VAUGHAN.

able rights of persons who had purchased shares, but obtained no legal transfer prior to the attachment. Property and the transfer of it are creatures of positive law. The practice of stock brokers in *Europe* is not to be regarded, if contrary to the act of congress. It is upon that the question must depend, without reference to the practice, however obstinate; and if by the law one kind of transfer only is permitted, it must follow that transfers not in conformity with the law are bad. I do not disturb the equitable rights of parties who transfer informally abroad. Among themselves it is done upon the footing of confidence; and the transfers are good perhaps, unless the rights of third persons intervene. But whether creditor or purchaser is immaterial, any person having an interfering right may say that the transfer is void, if it does not conform to the law. The act of incorporation is the exclusive rule for ascertaining the nature and modifications of the corporate property. If the charter has given a power to the corporation or to the stockholders individually, they have it; otherwise not. If it authorizes only a special and peculiar mode of assigning an interest in the corporation, it excludes all others, because none can exist but by special grant. The point therefore is this, whether the kind of transfer set up in this case is permitted by the terms of the act of incorporation, or by its general policy. I contend that it is not. No man can be a member of that corporation who is not either an original subscriber, successor or assignee. The third section of the law, 1 *U. S. Laws* 285., communicates the political character to none but the original subscribers, their successors and assigns. If a person having neither of these characters, claims an interest in the corporation, the law cannot notice it, this court cannot sanction it, the charter does not acknowledge it. These claimants are not original subscribers nor successors, but they interpose as assigns. How assigns? If so at all, they must be according to the charter. The twelfth fundamental article of the bank, *ib.* 291., directs that the stock of the corporation shall be assignable and transferable, according to such rules as shall be instituted in that behalf by the laws and ordinances of the same; and the by-law of the bank, which is set forth in the certificate of stock, makes it transferable *at*

*the bank* personally or by attorney. There is then but one mode of transfer permitted by the charter. All others are prohibited, or which is the same thing are not permitted, and therefore a person who does not derive his interest, in this way, is not an assignee. The claimants do not so derive their interest, and therefore they are not members of, and cannot assert any interest in, the corporation. Any other construction of. the law would defeat its policy. The provisions relative to transfer are connected with the exclusion of alien influence. The bank was an object of jealousy. None but resident stockholders were permitted to vote by proxy. None but a citizen stockholder to be a director. If foreign ownership can be covered under the name of a citizen, here is at once an opening for the influence which it was intended to exclude. Under an *American* name aliens might vote, and in fact direct the bank. The law could not prevent the evil, but by permitting a transfer only on the books, which would at once disclose the real interest; and this court will disappoint all the caution of the law, if they recognise any title, except one arising out of such a transfer.

*Condy, Hallowell* and *Ingersoll* for the claimants. The only question is whether any transfer of this stock, is good to vest an interest, unless it is made on the books of the bank. The argument derived from policy, has no warrant in the law. The object of that law was to use foreign capital for domestic purposes, and to prevent any but residents in the *United States* from interfering with the use of it, by proxies. Foreigners if present might vote. Citizens if resident abroad, could not vote. The consideration was not whether citizen or alien, but whether present or absent, with which the mode of transfer had of course nothing to do. If this transfer was not permitted, still *Bird, Savage*, and *Bird* could not vote; if it was permitted, their assignees abroad would be in the same situation. In order to go to the root of the supposed mischief, the argument should have struck at all trusts in this stock, as well for citizens as aliens, and whether by transfer on the books as elsewhere; but for this there is no authority in the charter. The true construction of the clause relative to transfer, is that it was introduced for the

1811.

U. STATES
v.
VAUGHAN.

convenience and protection of the bank, that they might know whom to recognise as stockholders, for paying dividends and the like. The government cared nothing about the mode, they left it to a by-law of the bank. Grant that any mode of transfer except that pointed out by the by-law, is void, still as between whom is it void? Certainly as between the bank and the nominal holder only. The 8th & 9th *W*. 3. *c.* 20, one of the statutes relative to the bank of *England*, makes void both in law and equity every transfer or contract for the transfer of stock, unless it is registered in the books of the bank within seven days, and actually transferred within fourteen days after the making of the contract ·&c. *sec.* 34. If the charter in question had done so, it would have been another case; its not doing so, is conclusive against the argument, since congress had the statute of *William* before their eyes, and copied parts of it. They wished to encourage foreign purchasers, which could only be by permitting sales without a transfer to vest a title, saving the bank from harm at the same time, by giving them a right to disregard any transfer not on their books. This is not so strong a case as *Levinz* v. *Will* (a), where the mortgage was not good by law to pass any estate, and yet it was held to pass an estate as against a creditor. Suppose a commission of bankruptcy, and an assignment; Mr. *Dallas's* argument is that the stock would not pass. Nay more, his argument is against the *United States*, because if it is good, they can get nothing even under a sale by the sheriff. This court however, will regard the equitable right. The assignment of a chose in action is absolutely prohibited at common law; and yet it is good in equity. The instant the money is paid to the vendor, he becomes a trustee, and equity would compel a specific execution. An equity is indeed conceded as between the original parties, but not as against a creditor. The concession must go the whole length. If a purchaser without notice were to interpose, he would no doubt take the stock; upon principles however which do not touch this case. But under the practice which was in evidence, and which was introduced merely to rebut a presumption of fraud arising from a delay to transfer, a second purchase from the same

(a) 1 *Dall.* 430.

person could not occur, as the certificate was always deli- 1811.
vered to the first purchaser. As to a creditor, he stands in ———
the same situation with respect to the thing attached, as his U. STATES
debtor. If the debtor has transferred the equitable interest *v.*
in a chose in action, it is not attachable as his property. VAUGHAN.
*Lewis* v. *Wallis* (*a*), *Corderoy* v. *Carpenter et al.* (*b*), *Steven-
son* v. *Pemberton* (*c*), *Wakefield* v. *Martin* (*d*). Even an ap-
propriation of a debt due to the defendant by the garnishee,
cuts out a foreign attachment. *Sharpless* v. *Welsh et al.* (*e*).

*Dallas* in reply said, that the 34th section of 8 & 9 *W.*
3. had not been adopted, because the limitation of time
would have been absurd. But the manner of transferring
was intended to supply its place, the stock being at the risk
of the purchaser, until a transfer on the books. As to the
cases of a commission of bankruptcy, and a sheriff's sale, it
was to be observed that both of these modes of deriving
title affirmed the property of the nominal holder; and *res
judicata* was moreover a title in the law, which was above all
the restraints that were placed upon voluntary transfers.
Before 8 & 9 *W.* 3., the shares of the bank of *England*
stood as any other property, and the transfer of them was
a matter in *pays*. It was the object of that statute, as it was
of the act of congress, to make the transfer a matter of pri-
vate record.

TILGHMAN C. J. gave no opinion upon the reserved
point, having been of counsel with the dutchess of *Cumber-
land*, and given an opinion in her favour, while at the bar.

YEATES J. The reserved point in this case is, whether ac-
cording to the true construction of the act of congress, in-
titled " an act to incorporate the subscribers to the bank of
" the *United States*," passed on the 25th of *February* 1791,
the depositions of the witnesses containing their answers to
the interrogatories proposed under the commissions, ought
to have been received in evidence upon the trial of this
cause.
It cannot be denied, that a mere chose in action equitably

(*a*) 7 *Vin.* 226. *pl.* 18.   (*c*) 1 *Dall.* 3.         (*e*) 4 *Dall.* 279.
(*b*) 7 *Vin.* 225. *pl.* 15.   (*d*) 3 *Mass. Rep.* 558.

assigned, is not subject to the operation of a foreign attachment instituted against the party, whose name must necessarily be used at law for the recovery of the demand; and that an attaching creditor can stand on no better footing than his debtor. This abundantly appears from the *English* authorities, and the adjudications in our sister states' courts, cited on the argument. A strong instance of this kind occurred in this court in *January* term 1793. *John Caldwell* brought a foreign attachment against *Vance, Caldwell* and *Vance,* and laid it on effects supposed to have been in the hands of *Andrew* and *James Caldwell,* who at one time were considerably indebted to them. Upon the plea of *nulla bona,* it appeared that a letter had been written authorizing *Hugh Moore* to receive this debt, and apply it towards payment of a debt due to *Moore* and *Johnston;* and the jury under the direction of the court, being satisfied that it amounted to an equitable appropriation of the demand, found that the garnishees had no effects in their hands due to *Vance, Caldwell* and *Vance.* This court sanctioned the verdict by their judgment. In like manner a bond made assignable in its first creation, which requires by our act of assembly the ceremony of a seal and two witnesses to authorize the assignee to maintain a suit in his own name, if transferred *bona fide,* without seal or witnesses, is not liable to be attached for the debt of the obligee resident in a foreign country. This appears perfectly plain.

Is there then any solid distinction between the instances I have put, and the case of shares of bank stock of the bank of the *United States?* If there is, it must rest on the provisions of the act of congress incorporating that bank. From the terms of the act itself we are enabled to extract its true spirit and policy. It contains no negative words similar to the *British* statute of 8 & 9 *William* 3. *c.* 20. *s.* 34, respecting the enlarging of the capital stock of the bank of *England,* that transfers not entered within a certain period in the books of the bank, shall be utterly null and void. It merely declares, that the stock shall be assignable according to the by-laws of the institution, but leaves the general principles of law and equity applicable to sales, as it found them. The by-laws of the corporation would necessarily provide for the

security of the stockholders, and the internal government of their concerns. Citizens only could be directors of the body corporate; residents only could vote in the affairs of the company; but aliens could be stockholders, and if residents, were intitled to vote without restriction.

The depositions were offered in evidence, to prove, that *Bird, Savage,* and *Bird* had, in the usual course of business in the *London* market, fairly sold certain shares of this bank stock to the several claimants, received the full considerations stipulated to be paid therefor, and had delivered over the original certificates with powers of attorney to transfer the shares to the claimants respectively. A considerable period of time must necessarily arise between the sales and formal transfers, where the contract is made beyond seas. Whether the claimants have been guilty of culpable negligence, in not procuring the powers to be executed in a reasonable time, forms another subject of inquiry, referable to the operation of the testimony, when all the circumstances of the particular cases are disclosed. In what relation then, previous to a formal transfer, did the original contracting parties stand towards each other? As between them, it is conceded, there subsisted a certain degree of equity, and why not a trust? *Bird, Savage,* and *Bird* ceased to have a beneficial interest in the shares of bank stock, which they had sold for a full price. It is true, on the face of the bank books they were the *nominal stockholders,* and a payment of the semi-annual dividends to them would have justified the directors of the bank. But had the power to transfer been revoked by the death of the attorney before its execution, or had it been consumed by fire, a court of equity would certainly have decreed a specific execution of the contract. I see no reason for distinguishing such a case from a sale of lands to be conveyed under a letter of attorney, where the attorney cannot exercise his functions, or the instrument has been destroyed by casualty. I therefore view *Bird, Savage,* and *Bird,* for the purposes of the present argument, as mere trustees for the claimants, against whom a chancellor would inforce a specific execution of their contract, if his conscience was satisfied from the evidence, that the transactions were fair and correct; and thinking as I do, that the *United*

1811.

U. STATES
*v.*
VAUGHAN.

*States* can have no claim on bank stock, which their debtors had sold *bona fide*, previously to the laying of this attachment, I am of opinion, that the depositions were properly admitted as evidence to the jury on the trial.

BRACKENRIDGE J. Under this incorporation, only a *subscriber*, successor or assignee, can be a stockholder; and stockholders usually residing within the *United States* may vote; and a stockholder being a citizen of the *United States* shall be eligible as a director. For the purpose of ascertaining these rights, in the case of successor or assignee, some entry on the books of the corporation must be necessary. In the case of an original stockholder the subscription is evidence. I take this to be the extent of the regulation with regard to the notoriety of transfer. What should be evidence of an equitable transfer, or whether there could be an equitable transfer, is what I incline to think the corporation had no power to say. It could be the subject only of legislative exclusion; and if not excluded by the act of incorporation, the courts of law alone can be competent to determine. This on the general principle of the common law, as to what shall constitute an equitable interest in this as in any other species of property.

If an equitable interest is excluded, and the property only vests from the transfer on the books, so that the payment of the consideration and the delivering the certificate, are nothing without completing the evidence of purchase, it would so impede the transfer of stock, that we cannot suppose the corporation, admitting it to have the power, did contemplate such extent in this by-law. Nor unless we take it that the *United States* had it in view to discourage the stockholding by foreigners, to a greater extent than is expressed, can we suppose that they contemplated any mischief in the transfer at a distance. I must therefore be of opinion, that an interest could pass prior to the entry of a transfer on the books of the company. I go no farther at present, as it would be running into the second point of the case yet to be discussed, whether by delay in having the transfer entered on the books in a reasonable time, that equity is lost, which by the payment of the consideration, and the delivery of the

certificate, did at first exist. Had the certificate been retained by the original holders by the negligence of the dutchess of *Cumberland*, even though she had paid the consideration, and having that evidence still in their possession, they had transferred formally to a *bona fide* subsequent purchaser, it might form another case. She might be considered as in contemplation of law, a party to the fraud, and cut out. But an attaching creditor, even in the case of a certificate detained, the consideration being paid, is not in the situation of a purchaser. Although a debt may be due to him, it was not a credit given and a debt arising on this specific fund as in the case of a purchase. It is in the light of an execution, but not equally to be favoured (if a distinction could be drawn in carrying it into effect) with an execution. For that (the execution) supposes a judgment, which is of a higher nature than a mere debt of contract. But I take it that even a levy under an execution on stock in the hands of a trustee for another, could not take away the right of the *cestui que use.* It must be sold subject to his equity. If, therefore, the point is supportable of an equity independent of a transfer on the books, the stock attached must be subject to that equity.

The court being thus in favour of the claimants on the reserved point, judgment was entered for the dutchess of *Cumberland.* Afterwards the motion for a new trial by *Capper* and *Tucker*, was argued upon the evidence, and the court being of opinion that the matter required another examination, awarded a new trial as to them. Judgment was entered for the *United States* as to the eight shares unclaimed.