Amos N. Beckwith *vs.* George A. Burrough *et als.*

B., owning certain corporate shares, transferred them on the books of the corporation as collateral security to G. The arrangements between B. and G. being ended, G., at B.'s request, indorsed and transferred the certificate of the stock to D., a creditor of B. Before any transfer had been made on the books of the corporation from G. to D. the stock was attached as the property of B. by B.'s creditors.

The charter of the corporation contained no provision as to the transfer of stock, but the by-laws provided that "all transfers of stock shall be made in the books of the company."

On a bill in equity brought to establish the lien of the attachment:

*Held*, that in the absence of a fraudulent intent on the part of B. in the transfer of the stock the attachment could not be sustained.

*Held*, further, that at the time of the attachment B. had neither the legal title to the stock which was in G., nor the equitable title which was in D.

*Query*, whether the mere equitable title to corporate stock is attachable in Rhode Island.

*Query*, whether an unrecorded transfer of corporate stock which stands on the books of the corporation in the name of a debtor is good as against an attaching creditor.

Bill in Equity to establish a lien. The facts involved are stated in the opinion of the court.

*James M. Ripley, John D. Thurston, & George Fuller*, for complainant.

It is well settled that where the charter of a corporation, or the general statute law of the State, or a by-law of the corporation made in pursuance of authority conferred by its charter or the general law, prescribes a method for the transfer of corporate shares, they can only be transferred in the method prescribed.

Accordingly it has been repeatedly held, where the transfer of stock was required to be entered in the books of the corporation, that an assignment of stock by indorsement on the certificate and delivery of the certificate to the supposed assignee, without entry on the books of the corporation, while it might as between the parties convey the equitable interest in the stock, would not avail as against an attachment of the stock by a creditor of the original holder, but as to such attachment would be null and void. *Fisher* v. *Essex Bank*, 5 Gray, 373, 379, decision by Shaw, C. J.; *Rock* v. *Nichols*, 3 Allen, 342; *Dutton* v. *Connecticut Bank*, 13 Conn. 493; *Colt* v. *Ives*, 31 Conn. 25; *Skowhegan Bank* v. *Cutler*, 49 Me. 315; *Weston* v. *Bear River, &c. Co.* 5 Cal. 186; *Naglee* v. *Pacific Wharf Co.* 20 Cal. 529; *Pinkerton* v. *Manchester, &c. R. R.* 42 N. H. 424.

The ground upon which the decision is put in some of these cases is, that without an entry of the transfer of the stock upon the books of the corporation no delivery of the stock has been made sufficient to satisfy the statute against fraudulent conveyances.

In *Pinkerton* v. *Manchester, &c. Railroad*, in the Court of New Hampshire, the case last cited, one Holbrook, on the 8th of July, 1854, assigned, by an indorsement on the certificates, ninety-six shares of the stock of the Manchester & Lawrence Railroad to the Granite Bank, Boston, as collateral security for his debts to the bank, amounting to over one hundred thousand dollars, and delivered the certificates to the bank. The certificates were not sent to the office of the railroad for transfer upon its books until the 3d of August, 1854. Meanwhile, between the date of the assignment and the time of sending said certificates to the office of the railroad for transfer, an attachment of the stock was made by another creditor of Holbrook. There was nothing in the

charter or by-laws of the corporation in question regulating the mode of making a transfer. But it was held, that the stock not having been transferred on the books of the railroad company the possession of the stock was not changed, and that therefore a secret trust was shown, which avoided the transfer as to the attaching creditor.

In this State by Gen. Stat. R. I. cap. 139, § 2, it is provided that the shares of stock of any corporation " shall be transferable in such manner as shall be prescribed by the by-laws of the corporation." .

The alleged transfer of said two hundred and fifty shares of stock to Lucian Draper not having been made on the books of the American Enamel Company, as required by the by-laws, it follows that the same was, as against the attachment in question, void.

*Nathan W. Littlefield*, for respondents.

*May* 7, 1881. DURFEE, C. J. The bill shows that December 13, 1878, the complainant, and one John T. Mauran, having a claim by promissory note against the defendant Burrough, commenced an action at law against him in this court to recover the same, causing the writ to be served by the attachment of all his right, title, and interest in two hundred and fifty shares of the capital stock of the American Enamel Company, which stock once belonged to him, but had, before the attachment, been transferred by him on the transfer book of the corporation into the name of one Mary A. Gerald ; that they recovered judgment against Burrough and took out execution thereon, which was levied on said stock, and that at the execution sale all his right, title, and interest in the stock was sold to the complainant, and was conveyed to him in due form by the sheriff. The bill alleges that the stock was fraudulently transferred by Burrough after he had become insolvent, for the purpose of hindering, delaying, and defrauding his creditors, and seeks relief by having the transfer annulled and the stock transferred to the complainant on the transfer book of the corporation. The answer of Burrough denies that he was insolvent when he made the transfer, or that he made it with any intent to hinder, delay, or defraud his creditors, and, on the contrary, avers that the stock was transferred to Mary A. Gerald, July 11, 1878, in pursuance of an agreement or understanding previously had with her that she

would lend him on security thereof several thousand dollars' worth of United States bonds to enable him to raise money to pay his debts, but that after the transfer had been made, the said Mary changed her mind and declined to lend the bonds, and that, subsequently, October 4, 1878, at the request of one Lucian Draper, to whom he was indebted in about the sum of $10,000, he requested the said Mary to transfer the stock to said Draper, and that said Mary, agreeably to his request or direction, transferred the stock, by transfer indorsed on the certificate, to Draper to secure the payment of said $10,000, or to pay the same so far as it would go, and that at or about said October 4, before the attachment, he delivered the certificate so indorsed to Draper. The answer also avers that said Draper did not apply to perfect the transfer on the books of the corporation until after the attachment, because he wished to raise money on the stock either by sale or hypothecation, and the certificate as indorsed being negotiable, he could conveniently use it for that purpose. The answers of Mary A. Gerald and Lucian Draper confirm, so far as their knowledge extends, these statements of the answer of Burrough.

The case is submitted on bill, answers, and the proofs which have already been taken and which, substantially, though not fully in some points, support the answers, the right being reserved to try the question of fraud hereafter if it becomes material so to do. It is admitted that the charter of the American Enamel Company contains no provision in regard to the transfer of its stock, and that the by-laws provide that " all transfers of stock shall be made in the books of the company."

We understand that under the submission the parties wish us to decide whether, on the pleadings and proofs, independent of any allegation of fraud, the complainant makes a case which entitles him to relief. Considering the case in that light, we decide that the complainant acquired no title to the stock under the execution sale, because Burrough, the execution debtor, had no title to it, legal or equitable, at the time of either the sale or the attachment, and consequently that, in the absence of fraud, the complainant is not entitled to relief. Burrough had no legal title, because before the attachment he had transferred the legal title, by transfer on the corporation books, to Mary A. Gerald, and she had accepted

the transfer.   It is true the purpose for which the stock was transferred failed, but because of that the legal title did not revert to the grantor by mere operation of law.   It remained in the grantee, only a trust reverting, or rather resulting in favor of the grantor, investing him simply with the equitable title or estate.   We consider it questionable whether such an equitable title or estate is liable to attachment or to sale on execution.   The provisions of the statutes relating to the attachment of corporate stock, and to its sale on execution, seem to contemplate the attachment and sale of the legal estate or title, or, at least, of that which is of record on the corporation books.   Gen. Stat. R. I. cap. 197, § 9 ; cap. 212, § 18 and § 19.   But conceding, for the sake of the argument, that a mere equitable interest or estate in corporate stock is liable to attachment and sale on execution, we must still decide that the complainant acquired no title, because the defendant Burrough had parted with his equitable estate before the attachment, having conveyed it away to Lucian Draper.   This is so necessarily if the transfer on the certificate and the delivery of it by Burrough to Draper were effectual to pass the equitable title.   Where the legal and the equitable titles unite in the same person, it is well settled that such a transfer carries at least the equitable title, even when, by statute, charter, or by-law, the stock is declared to be transferable only on the corporation books.   *Lockwood* v. *Mechanics' National Bank*, 9 R. I. 308, 331 ; *Broadway Bank* v. *McElrath*, 13 N. J. Eq. 24 ; *The United States* v. *Vaughan*, 3 Binn. 394 ; *Grymes* v. *Hone*, 49 N. Y. 17 ; *Black* v. *Zacharie*, 3 How. U. S. 483 ; *Parrot* v. *Byers*, 40 Cal. 614 ; *Blouin* v. *Liquidators of Hart & Hebert*, 30 La. An. 714 ; *Bank of America* v. *McNiel*, 10 Bush, 54 ; Field on Corporations, §§ 131, 309.   In the case at bar, however, the legal title was in one person and the equitable in another, and the question is, what, in such a case, is the effect of such a transfer. It may be that in such a case the equitable title would not *always* pass ; as, for instance, if the transfer were made by the legal owner to pay a debt of his without the consent of the equitable owner. But we have no case like that here.   Here the transfer was made not in violation of the trust, but in fulfilment of it.   It was made under the direction of the equitable owner to secure or pay *pro tanto* his debt, and when made was delivered by him personally to

the transferee. We think the equitable title must be held to have passed. An equitable assignment may be made without deed or writing, by any act intended to operate as such, a delivery of the evidences of title being particularly significant of such an intent. 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 1641. And that a preëxisting debt is a good consideration for such an assignment to secure or pay it, wholly or in part, see 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 1645.

Without deciding, therefore, whether an unrecorded transfer would avail against an attaching creditor where the stock stood in the name of the debtor, we decide, for the reasons above given, that the complainant has not, independently of his charges of fraud, made out a case which entitles him to relief.