### No. 2413
### Second Circuit

---

### J. L. CARGILL v. B. C. OTWELL; RUSTON STATE BANK, Garnishee

---

(December 1, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Garnishment — Par. 14.**

Money loaned by a bank to be used in making a crop, secured by a duly recorded privilege on the crop and placed to the credit of the borrower under an agreement that it should only be withdrawn for the purpose for which it was loaned and under such supervision as might be necessary to satisfy the lender that it was not being used for any other purpose is not subject to garnishment by another creditor.

2. **Louisiana Digest—Obligations—Par. 50.**

Article 1764 of the Civil Code expressly provides that all things that are not prohibited by law may legally become the subject of or the motive of contracts.

Therefore a bank, in making a secured loan may stipulate conditions which would preclude another creditor from taking the deposits out of the control of the bank through a garnishment proceeding.

3. **Louisiana Digest—Garnishment — Par. 50, 51, 53.**

A person, when garnisheed, is entitled to every defense which he might urge against the defendant in the writ.

Appeal from Third Judicial District Court of Louisiana, Parish of Lincoln, Hon. S. D. Pearce, Judge.

This is a suit in which an attempt was made to garnishee a deposit in a bank. There was judgment for the bank denying the garnishment and plaintiff appealed.

Judgment affirmed.

T. S. Price, of Ruston, attorney for plaintiff, appellant.

Barksdale, Warren & McBride, of Ruston, attorneys for garnishee, appellee.

REYNOLDS, J. The question for decision in this case is, whether money, loaned to be used in making a crop, secured by a duly recorded privilege on the crop and placed to the credit of the borrower under an agreement that it should only be withdrawn for the purposes for which it was loaned and under such supervision as might be necessary to satisfy the lender that it was not being used for any other purpose, is subject to garnishment?

Our learned Brother of the district court, Hon. S. D. Pearce, in a clear and convincing written opinion held that the money was not subject to garnishment and so satisfied are we with its correctness that we adopt his judgment and most of his reasoning as our own.

"Plaintiff obtained judgment by confession against defendant for the sum of $278.85, with 8% per annum interest thereon from January 1, 1921, and ten per cent attorney's fees and costs; which judgment was on September 7, 1922. No part of it

having been paid, and suspecting that defendant had money on deposit in the Ruston State Bank, plaintiff caused a writ of fi. fa. to issue on said judgment on February 26, 1925, and garnisheed the Ruston State Bank, or such funds or property of the defendant as might be in the hands, care and keeping of said bank.

"On the 6th day of March, 1925, the Ruston State Bank, through its President, D. M. Atkins, answered the interrogatories propounded to it as garnishee by the said judgment creditor. The questions propounded to the garnishee were the usual questions propounded to garnishees in such cases, consisting of three interrogatories, viz: (1) Have you in your hands or under your control any funds belonging to defendant, B. C. Otwell; (2) Are you indebted to said Otwell in any sum; and, (3) Have you at any time since service of this garnishment made any payment to said Otwell, or settlement of any kind with him. To each and every one of these questions the garnishee answered as follows: 'No, except as hereinafter shown'. The garnishee then proceeds to make further answer explanatory of the business relation existing between it (the garnishee) and the judgment debtor, B. C. Otwell, at the time of the service of garnishment in the case, which relation it stated to be as follows:

" 'That the said Otwell, who is a farmer, being desirous of making a crop of cotton, corn, sugar cane and other agricultural products during the year 1925, and not having the means to secure supplies and other necessary advances necessary to enable him to do so, applied to the Ruston State Bank for a loan; that the said bank consented to extend the said Otwell the loan of a limited sum on terms and conditions that would protect the bank, the details of which were agreed upon between them. Under this agreement and contract, which was reduced to writing and signed up on February 24, 1925, the bank loaned Otwell four hundred dollars, to be placed to his credit on the books of said bank, and for which Otwell executed his promissory note for $452.00 with 8% interest from October 1, 1925, in favor of said bank, the interest being capitalized and included in the face of the note. On the same date and at the same time Otwell executed his note in favor of the bank for six hundred dollars, and secured the said note by a crop pledge in favor of the bank upon

all crops of cotton, corn, sugar cane and other agricultural products to be grown by the said Otwell during the year 1925 upon the following described land in Lincoln parish, Louisiana, viz: E½ SE¼ Sec. 17 and S½ NE¼ Sec. 25, T. 19 N., R. 2 West, said lands belonging to S. M. Otwell who also signed said note for four hundred and thirty-two dollars as joint and solidary obligor. The said six hundred dollar note, secured by the crop pledge aforesaid, were delivered to and accepted by the bank as collateral security for the aforesaid loan of four hundred dollars extended by the said bank to the said Otwell.

" 'The said crop pledge and the said note for six hundred dollars the pledge was given to secure were executed and signed by Otwell before Max Bradley, Clerk of the District Court and ex-officio Notary Public for Lincoln parish, Louisiana, on February 24, 1925, and on the same date filed for record in the said office, the note having been paraphed by the said officer to identify it with the crop pledge; and both stipulating that they were for the benefit and security of the said bank.'

"The garnishee further answering to the aforesaid interrogatories deposes and says that at the time the bank made the said loan to Otwell and placed the same to his credit and subject to his check, it was fully understood between them that the loan was made solely and exclusive for the purpose of purchasing necessary supplies and defraying necessary expenses required in planting, cultivating and harvesting a crop during the year 1925, as contemplated in the said act of pledge; the said money to remain in deposit in trust with the said bank, and not to be withdrawn, assigned or used by the said Otwell until and as needed and as required for said purpose; and that under the said agreement and by virtue thereof the bank expressly reserved the right to supervise and control the disposition of the said fund to the end that it might be paid out and appropriated for the particular purpose stipulated in the agreement; that the bank would not have made the loan nor credited the proceeds to defendant except under the said express agreement and that on account of the trust feature of the said agreement and of its control over the said funds they are not subject to seizure attachment, garnishment or any other legal process for any other purpose.

"It is further shown that the common debtor, Otwell, is without funds or credit and is insolvent; and that diversion of the said funds to any other purpose than the making of a crop this year will destroy said debtor's ability to make a crop, and will also destroy the bank's security on the faith of which the loan was made.

"The bank further claims that in the event the court sustains the said garnishment of said funds, then and in that event it insists that it is entitled to the right to compensate the aforesaid $432.00 note with the funds garnisheed herein.

"Upon the filing by the Ruston State Bank of its answers to the interrogatories propounded to it as garnishee hereinbefore stated, the plaintiff, J. L. Cargill, files herein a motion for judgment against the bank as garnishee ordering the said bank to deliver to plaintiff the money on deposit in the said bank to the credit of the debtor in execution, Otwell, in an amount sufficient to pay plaintiff's said judgment and costs. And it is upon this motion and the garnishee's resistance thereof as hereinbefore set forth that the case is submitted to the court for decision.

"The legal questions involved in this contest are res nova in Louisiana law and jurisprudence, so far as this court·has been able to ascertain; hence the court is compelled to rely almost wholly upon the law of other jurisdictions, and precedents of other jurisdictions in point appear to be none too numerous. There are, however, certain principles of law bearing upon allied questions in our own jurisdiction that appear to be fundamental. For example: While the lender of money upon a crop pledge to enable the borrower to make a crop is not expected or required to follow up the disbursement of the money so loaned and see to it that the money is used solely for the purpose it was loaned, probably, it is nevertheless true that if he knowingly permits the money to be used for a purpose other than and foreign to the purpose of planting, growing and harvesting of a crop, he loses his privilege upon the crop. And it is also true that the merchant selling the planter necessary plantation supplies to enable him to make a crop has a privilege on the crop to secure the payment of his account, for such articles as constitute necessary supplies for the making of the crop; but for such articles sold as do not constitute necessary

supplies for that purpose the seller has no privilege whatever. And in neither of these cases does the privilege extend beyond the crops of the year the supplies were furnished, or the money loaned, as the case may be. And in the case of a crop pledge it was held by the court in the case of National Bank of Commerce vs. Sullivan, 117 La. 163, that a person advancing money to be used in the making of a crop must prove that it was so used in order to preserve his pledge, where the privilege is contested.

"Hence, in the case of a money lender, such as a bank, letting out money on crop pledges and placing the money so loaned to the credit of the borrower on the books of the bank subject to the checking rights of the borrower, it is of the most vital importance to the lender that he safeguard his interests by an agreement with the borrower by which the lender may control and supervise the disbursement and expenditure of the money loaned to the end that it may not be diverted from the purpose it was loaned for. This precaution is necessary as protection not only against the faithless or extravagant borrower, but also as against creditors of the borrower. And it would be indeed an unwise, improvident, and unjust legal system that would withhold its sanction from a business policy so sound and so imperatively necessary for the protection of those who are able to help and willing to help the needy and unfortunate, if in doing so that may not legally covenant for their safety and protection. Does the law of Louisiana deny to parties able to contract and capable of contracting the right of contracting in this way? I do not think it does. Such form of contracting is certainly not contra bonos mores; nor is it in contravention of any prohibitory law that the court knows of.

"Then what do we find the situation in this case to be? Considered according to the sworn statement of D. M. Atkins, president of Ruston State Bank, who personally made the contract with B. C. Otwell which is involved in this contest, the court finds that the bank loaned Otwell four hundred dollars to furnish him with the necessary supplies and means to make a crop this year; that the said loan was secured by a collateral note for six hundred dollars, which collateral note was secured by a crop pledge upon the crop to be grown

by the debtor this year; all of which transactions were and are in writing and are before the court. That before making the loan the bank required of Otwell that he consent for the bank to supervise the expenditure of the money so loaned to the extent and for the purpose of seeing that it was used only for the purpose it was loaned, viz: for the buying of provisions and supplies and other things necessarily required in making a crop this year, and for that purpose and to that end that the bank should have possession and control of the funds, notwithstanding they were placed to the credit of the borrower on the books of the bank. This arrangement constitutes a form of trusteeship, which confers upon the bank the dual relation of both debtor and fiduciary to the borrower; and the existence of this fiduciary capacity in the holding of the funds and directing their disbursement imposes a limitation upon the rights of Otwell's creditors. If the funds borrowed had been placed to the credit of Otwell on the books of the bank subject to his unrestricted right to check upon the same, then, and in that event the funds would have undoubtedly been subject to garnishment by his creditors; but not so under the condition of things, agreement and contract sworn to by the president of the Ruston State Bank.

"If by the agreement and understanding between Otwell and the bank the former had limited and restricted the rights and uses he might make use of said funds, an attaching creditor could certainly exercise no greater right. Hence, if Otwell would have no right to draw out the funds and use them in paying Cargill's judgment, because of the restrictions placed upon his use of the funds by the bank on making him the loan as the condition on which the loan was made, much less would Cargill as a creditor of Otwell have the right by seizure of said funds to apply them to his judgment and divert them from the use for which they were loaned. This is a simple, self-evident legal axiom that cannot be refuted. There is no fraud against the debtor's creditors, and no unfairness, in an agreement of this kind. Indeed, for the bank not to have had some such agreement and understanding, would have been, on the bank's part, the grossest of short-sighted policy, as only in some such way could it have protected the security it demanded and received from the borrower

and the loan it had made upon that security; and the action of the bank in demanding this right, and of Otwell in granting it, is to be commended rather than criticized. It was the principal, if not only, saving clause in the transaction, insofar as the bank is concerned; and as it concerned Otwell, it was the only thing that made sure his means of making a crop this year and supporting his family. The principle of law announced above as axiomatic appears to be fundamental to the effect that a seizing creditor cannot acquire any greater right in the property of his debtor than the debtor himself has, as announced in Ruling Case Law, 12 vol. p. 778. And extending this principle a little further we find under the law on attachments that the relations previously established between the garnishee and a common debtor cannot be upset or interfered with by garnishment proceedings at the instance of a prior creditor.

"This principle of law appears to be deeply embedded in the jurisprudence of other jurisdictions, as well as in text book law; and it is by no means antagonistic to the law or jurisprudence of Louisiana, so far as this court has been able to learn, if in fact and on the contrary, it is not directly in line with our own jurisprudence. For example, in the case of Fory vs. American National Bank, 136 La. 298, 67 South. 10, it was held that:

"'An agreement entered into between a bank and a depositor with said bank, that a certain deposit to be made in the future by said depositor shall be placed by the bank to the credit of a past due note of the depositor, which note was held by the bank, is a binding agreement.'

"Under the title of Conventional Obligations in the Revised Civil Code of Louisiana the subject of contracts is very thoroughly discussed and provided for, and is the basis of our law of contract. Article 1764 of the Code provides that:

"'All things that are not forbidden by law, may legally become the subject of or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider: 1. That which is the essence of the contract, etc. 2. Things which, though not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made

respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description, etc.   3.   Accidental stipulations, which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties.' etc.

"Under the broad aegis of this principle of our civil law man finds authority for and protection in every form of covenant necessary in the transaction of honest and legitimate business affairs of every day life. And probably in no other department of the law of our state in its relation to the laws of other states is there that confluent tendency as is to be observed in the laws governing commercial contracts, the wisdom of which is manifest to every far-sighted business man, whether he be versed in the law or not. Let us see, then, what the common law text writers and courts of last resort of other jurisdictions have to say on this question.

" 'Where a party has reserved to himself the right to discharge his obligation under the contract in several ways, he cannot be deprived of such right by garnishing creditors of the other party.   The rule being that relations between the garnishee and defendant cannot be interfered with by garnishment.'

" 'Corpus Juris, 28 Vol. pp. 133, 134, citing Wase on Attachment, sec. 473, et seq., Drake on Attachment, secs. 517, 520, 593.

" 'When a deposit is set apart for a particular purpose according to express statutory sanction, it cannot be reached by garnishment at the instance of a general creditor.

" '28 Corpus Juris, 117.

" 'When the right of the principal defendant in case of an attachment sued out against a third person as garnishee is subject to a right of the garnishee under a contract between them, the right of the garnisher is likewise subject to the right of the garnishee.

" 'Wall vs. Norfolk & W. Ry. Co. (W. Va.) 64 L. R. A. 501.

" 'A garnishee has a right to set up any defence against attachment process which he could have done against the debtor in the principal action; and if the debtor be insolvent and owe the garnishee on a note not due, for which he has not sufficient security, he is not bound to risk the loss of his debt in answer to the garnishee process.

" 'Schuler vs. Israel, 120 U. S. 506.

" 'Whatever rights the garnishee may have under existing contracts with the principal debtor, he is entitled to have the benefit of as against the attaching creditor.

" 'North Chicago Rolling Mill Co. vs. St. Louis Ore Co., 152 U. S. 596.

" 'A garnishing creditor acquires no greater rights against the garnishee than his judgment debtor would have had against him, had he sought to recover against the garnishee.

" 'Hoyt vs. Clemons, L. R. A., 1915 C., 167 Iowa 330, 149 N. W. 442.

" 'McAlmond vs. Bevington, 53 L. R. A., 597 (Wash.)

" 'A person when garnisheed is entitled to every defence which he might urge against the defendant in the writ.

" 'Mathis vs. Clark, 12 Am. Dec. 688;

" 'Weil vs. Tyler, 90 Am. Dec. 441;

" 'Whipple vs. Robbins, 93 Am. Dec. 64;

" 'Walters vs. Washington Ins. Co., 63 Am. Dec. 451;

" 'Webb vs. Miller, 57 Am. Dec. 189.

" 'In order, however, that a debt not presently payable may be reached by garnishment, it must be one which will become payable absolutely, and not dependent upon any contingency.

" '28 Corpus Juris, 130.'

"It would seem that the above quoted authorities, representing as they do the larger body of law to the same effect, have a direct bearing upon the case at bar and are decisive of the rights of the garnishee in this case. The point is lengthily and interestingly discussed by the United States Supreme Court in the above cited case of North Chicago Rolling Mill Co. vs. St. Louis Ore Co., 152 U. S. 596. In this discussion this august tribunal announced the following sound doctrine relative to the relation and the rights of the garnisher and garnishee:

" 'The proposition here laid down is in harmony with the generally recognized principle that the rights of the garnisher do not rise above or extend beyond those of his debtor; that the garnishee shall not by operation of the proceedings against him be placed in any worse condition than he would have been in had the principal debtor's claim been enforced against him directly; that the liability, legal and equit-

able, of the garnishee to the principal debtor is a measure of his liability to the attaching creditor, who takes the egoes of the principal debtor and can assert only the rights of the latter.' Citing Towner vs. George, 53 Ill. 168; Richardson vs. Lester, 83 Ill. 55; Henry vs. Wilson, (Iowa) May 12, 1892; Huntington vs. Risdon, 43 Iowa 518.

"To the same effect is the décision of the same tribunal in the case of Schuler vs. Israel, 120 U. S. 506, the concluding paragraph of which decision reads as follows:

"'As we understand the law concerning the condition of a garnishee in attachment, he has the same rights in defending himself against that process at the time of its service upon him that he would have had against the debtor in the suit for whose property he is called upon to account. And while it may be true that in a suit brought by Israel against the bank it could in an ordinary action at law only make plea of set off of so much of Israel's debt to the bank as was then due, it could, by filing a bill in chancery, in such case, alleging Israel's insolvency, and that if it was compelled to pay its own debt to Israel, the debt which Israel owed it, but which was not due, would be lost, be relieved by a proper decree in equity; and, as a garnishee is only compelled to be responsible for that which, both in law and equity, ought to have gone to pay the principal defendant in the main suit, he can set up all the defences in this proceeding which he would have in either a court of law or a court of equity.'

"Quoting U. S. vs. Vaughn, 3 Binn. 394; Shattuck vs. Smith, 16 Vt. 132; Ex parte Stephens, 11 Ves. 24; Drake on Attachment, sections 521 and 528.

"Coming back to the case in hand, if the garnisher, Cargill, by his attachment of the funds of Otwell in the hands of Ruston State Bank, the garnishee, has the legal right to have the funds so attached applied to the debt due to Cargill by Otwell, at once the bank's crop pledge is destroyed and ceases to operate as a privilege upon Otwell's growing crop. This would work the gravest hardship and injustice upon the bank, at whose expense Cargill would enrich himself; not on account of any wrongdoing on the part of the bank in its transaction with Otwell, for that was commendable, and was inspired by a generous motive as well as a business

purpose; and the effect of it made it possible for Otwell, at the end of the year when the crop was harvested, to pay both the bank and Cargill, should the year prove to be a good crop year and Otwell make a good crop. The situation is pregnant with equity, and the equity is wholly with the bank; but it is not necessary for the court to base its judgment upon the equity of the case, even if that was permissible under Louisiana law, as is evident from the law hereinabove quoted.

"The bank (garnishee) would have been in a helpless and hopeless situation, insofar as getting relief through the courts from the present state of affairs, but for the agreement it had with Otwell, the common debtor, at the time it made the loan, and the reservation of its supervisory right over the disbursement of the funds loaned to the end that they should be used only in the purchase of necessary supplies to make the crop of this year. And it made its position still more secure and its right of supervision more easy and manageable by retaining in its possession the money loaned though placed to the credit of the checking account of its debtor. Indeed, by retaining actual possession of the funds loaned was the only way that supervision of their expenditure could have been exercised. There is no legal inhibition in the law of Louisiana against the reservation of this right; and such reservation is certainly founded upon wisdom and the soundest business judgment, if, in fact, it is not the only safe way for the bank.

"Viewing the legal question presented to the court in this case as it does, and as hereinabove expressed in this opinion, the court is of the opinion that the funds loaned by the garnishee to the judgment debtor of plaintiff, and placed to the credit of said debtor on the books of the garnishee, under the agreement and understanding stated by the garnishee in its answers to the interrogatories propounded to it in this case as the basis upon which the said loan was made, and stipulations upon which the money was to be disbursed, are not subject to garnishment at the hands of a creditor of the borrower of the said funds; and that the garnishee is not required to turn over the said funds to the said creditor; nor is the said creditor entitled to have judgment against the garnishee on account of the said garnishment

that the garnishee is entitled to be discharged from the garnishment, and the garnishment annulled and set aside, at the cost of the garnisher, J. L. Cargill. And it is so ordered."

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.