# The Philadelphia and Reading Railroad Company *versus* Waterman *et al.*

1. A case stated is like an issue developed by special pleading and presents the very matter which is up for judgment.

2. The court cannot go beyond the issue, however manifest the justice which might be reached by going further; the presumption is, that what is not included was kept out for sufficient reason.

3. By section 94 of Act of Congress of June 30th 1864, a duty of $2 per ton is laid on pig-iron, and $3 on railroad iron, with the proviso that iron advanced beyond pig-iron, &c., on which no duty has been paid as pig-iron, &c., shall pay in addition $3 per ton. The meaning is that pig-iron shall pay $2, railroad iron made of pig-iron that has paid duty, $3, and railroad iron made of pig-iron which has not paid duty, $6.

4. By the same section pig-iron is taxable if "used by the manufacturers thereof;" a manufacturer "*uses*" his pig-iron when he *advances* it into railroad iron.

February 19th 1867. Before WOODWARD, C. J., THOMPSON and STRONG, JJ. READ, J., sick. AGNEW, J., at Nisi Prius.

Certificate from Nisi Prius.

This was an amicable action between Isaac S. Waterman and Thomas Beaver, trading as Waterman & Beaver, plaintiffs, and The Philadelphia and Reading Railroad Company, defendants, filed February 17th 1866, in which the following case, in the nature of a special verdict, was stated for the opinion of the court :—

" 1. In February 1864, the plaintiffs agreed to sell and the defendants to purchase 4000 tons of railroad iron, of which $1652\frac{15}{80}$ tons were to be delivered, and were actually delivered, after the 1st of July 1864.

" 2. The contract fixed the price to be paid by the defendants, but contained no provision for the payment of the duties to be imposed by law subsequent to the date of the contract.

" 3. The $1652\frac{15}{80}$ tons of railroad iron were manufactured by the plaintiffs from pig-iron, manufactured by themselves, upon which no duty had been paid.

" 4. $1\frac{7}{24}$ tons of pig-iron are required for the manufacture of one ton of railroad iron.

" If the court shall be of opinion that, under the provisions of the 97th section of the Act of Congress, entitled ' An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' approved June 30th 1864, the plaintiffs are entitled to recover from the defendants

4 P. F. SMITH—22

the increased tax of $1.50 per ton only upon the $1652\frac{15}{80}$ tons of railroad iron as aforesaid, then it is agreed that judgment shall be entered for the plaintiffs for $2775.67, with interest from December 20th 1864.

"If the court shall be of opinion that, under the provisions of the 94th and 97th sections of the said act, the plaintiffs are entitled to recover the tax upon the pig-iron which entered into the composition of the said $1652\frac{15}{80}$ tons of railroad iron, and also the increased tax of $1.50 upon each ton of the said $1652\frac{15}{80}$ tons of railroad iron so made, then it is agreed that judgment shall be entered for the plaintiffs for the sum of $7555.38, with interest from December 20th 1864. But if the court shall be of opinion that the plaintiffs are entitled to recover the tax of $3 per ton, imposed upon 'castings of iron, on iron of all descriptions advanced beyond pig-iron, blooms, slabs or loops, upon which no duty has been assessed or paid, in the form of pig-iron, blooms, slabs or loops,' in addition to the increased tax of $1.50 per ton on railroad iron, then judgment shall be entered for the plaintiffs in the sum of $8327.02, with interest, &c."

By section 94 of Act of Congress of June 30th 1864, Brightly's Dig. p. 240, pl. 153, p. 244, pl. 173, it is provided : " That upon the articles, goods, wares and merchandise hereinafter mentioned, except where otherwise provided, * * * there shall be levied, collected and paid the following duties, to be paid by the producer or manufacturer thereof, that is to say : On railroad iron a duty of $3 per ton, provided that castings of iron, and iron of all descriptions advanced beyond pig-iron, blooms, slabs or loops, upon which no duty has been assessed or paid, in the form of pig-iron, blooms, slabs or loops, in addition to the foregoing rates of iron so advanced, a duty of $3 per ton."

And by section 97, Id. 248, pl. 185: " Every person, firm or corporation, who shall have made any contract prior to the passage of this act, and without other provision therein for the payment of duties imposed by law enacted subsequent thereto upon articles to be delivered under such contract, is hereby authorized and empowered to add to the price thereof so much money as will be equivalent to the duty so subsequently imposed on said articles, and not previously paid by the vendee, and shall be entitled by virtue hereof to be paid, and to sue for and recover the same accordingly."

On the 20th of February 1866, the opinion of the court at Nisi Prius was delivered by WOODWARD, C. J. :—

" The constitutionality of the 97th section of the Act of Congress of June 30th 1864, commonly called the ' Excise Law,' being conceded, or rather not questioned, I am of opinion that the contract of the parties, though made before the law was passed, is within the purview of the 97th section, and that the

iron manufactured under that contract is subject to the excise duties imposed by that act.

"By the Act of July 1st 1862, railroad iron was subject to a duty of $1.50 a ton, and pig-iron, when used by the manufacturer in making rails, was, I suppose, exempted from assessment by virtue of the 73d section of that act.

"But by the Act of 1864, pig-iron is subject to a duty of $2 per ton, and the tax on railroad iron is raised to $3 per ton, and one of the provisoes of the 94th section (which is the section that imposes these taxes), reads as follows: 'Provided that castings of iron, and iron of all descriptions advanced beyond pig-iron, blooms, slabs or loops, upon which no duty has been assessed or paid in the form of pig-iron, blooms, slabs or loops, shall be assessed and pay in addition to the foregoing rates of iron so advanced, a duty of three dollars per ton.'

"The meaning of this legislation is that pig-iron shall pay a duty of $2 the ton, and that railroad iron manufactured out of pig-iron that has paid that duty shall itself be assessed with $3 the ton, but that railroad iron made of pig-iron that has not been assessed, shall pay $6 the ton.

"As there was a large amount of pig-iron on hand when the Act of 1864 was passed, which was not likely to be returned for assessment, the legislature probably meant by the proviso to tax it in the form of rails, and, as an inducement to manufacturers of rails to return their pig-iron for assessment, the proviso makes the tax on rails something higher than it would be if duty were paid on the pigs.   It takes one ton and seven twenty-fourths of a ton of pig-iron to make a ton of rails.  At $2 per ton, the pig-iron that enters into a ton of rails would pay about          $2.65
"Add the duty on the rails   .    .    .    .    .          3.00

"And we have   .    .    .    .    .    .    .          $5.65
"But if the $2.65 be not paid on the pig-iron, the rails
   shall pay per ton   .    .    .    .    .    .          $6.00

"A difference of tax per ton of   .    .    .    .          .35

"The plaintiffs are manufacturers both of pig-iron and railroad iron.   They contracted with the defendants in February 1864 to manufacture and deliver 4000 tons of rails, of which $1652\frac{15}{80}$ were by the terms of the contract to be delivered, and were actually delivered, after the 1st of July 1864, the date of the Act of Congress in question.

"These rails were manufactured out of pig-iron, which the plaintiffs also manufactured, but whether before or after the date of the law is not ascertained in the case stated.   It is admitted, however, that no duty had been paid on the pig-iron that entered into these rails, and it is earnestly argued that no duty was assess-

able under the Act of 1864, because this pig-iron was neither sold, nor consumed or used by the manufacturers. Pig-iron is undoubtedly an article of commerce, and it is equally certain that it was not sold *as pig-iron* in this instance. But under the 94th section of the act it was taxable if ' used by the manufacturers thereof.' These are the very words of the enacting clause, and can it be doubted that a manufacturer *uses* his pig-iron when he converts, or, to use a stationary word, *advances* it into railroad iron, and then sells the rails ? Pig-iron is never used without conversion or advancement into some other form of iron.

" Such conversion is indeed the only use of which it is susceptible, and I hold the plaintiffs had ' used' their pig-iron within the meaning of the statute, when they made rails of it.

" This conclusion, sufficiently supported by the words of the 94th section, is strongly corroborated by the 83d and 86th sections of the same act.

" Then it should have been returned for assessment, and should have paid the prescribed duty of $2 the ton, but as no duty was assessed or paid upon it, the rails manufactured out of it are within the terms of the proviso to the 94th section, and liable to ' pay, in addition to the foregoing rates of iron so advanced, a duty of three dollars per ton'—that is, the rails are subject to a duty of $6 per ton.

" It was suggested that if the plaintiffs, through neglect of a public duty, had subjected the defendants to a higher rate of taxation than was necessary, the plaintiffs should bear the loss. However equitable this might be, I have no power, under the case stated, to adjust the equity. I am only empowered to enter judgment for one of several fixed sums of money, according to the view I may take of the meaning of the several provisions of the statute bearing on the subject.

" Having endeavored to express very briefly my understanding of the statute in the particulars in question, it is apparent that judgment must be entered for the largest sum mentioned in the case stated."

Judgment was rendered for the plaintiffs for $8909.91, and costs.

*J. E. Gowen,* for plaintiffs in error, cited Act of Congress of July 1st 1862, § 75 ; June 30th 1864, § 83, Brightly's Dig., p. 235, pl. 141 ; § 84, p. 236, pl. 142 ; §§ 85, 86, p. 237, pl. 143, 144 ; §§ 93, 94, p. 240, pl. 152, 153 ; § 173, 4th prov., p. 276, pl. 305 ; § 97, p. 248, pl. 185.

*S. Dickson,* for defendants in error, cited §§ 93 and 94 of Act of June 30th 1864, *supra ;* § 82, Brightly's Dig., p. 235, pl. 140, II. ; §§ 83, 84, *supra ;* Best on Presumptions 77 ; Rex *v.*

Long Buckley, 7 East 45; Rodwell v. Ridge, 1 C. & P. 220; Boutwell's Decisions, Nos. 6, 119, 217.

The opinion of the court was delivered, May 13th 1867, by

WOODWARD, C. J.—A case stated, when well drawn, is like an issue developed by special pleading, and presents in a single point or in a series of points, the very matter that is up for judgment. The court cannot go beyond the issue that is thus brought upon the record, however manifest the justice that might be reached by going farther. The duty of the court is to decide the case that is stated, and to presume that what is not included was kept out for sufficient reason. Proceeding on this principle this case was considered at Nisi Prius as involving only the construction of several sections of the Act of Congress known as the Excise Law of June 30th 1864, and not as involving the construction of the contract between the parties. Their contract was briefly alluded to, but was not set out, nor so minutely examined as it would have been if the adjustment of rights, under its peculiar terms, had been the business in hand. Consequently, whilst it was felt to be inequitable for Waterman & Beaver to enhance the price of their rails to their customer, by neglecting to pay duty upon the pig-iron used in the construction of the rails, the judgment stipulated for was fixed in amount, according to the construction to be placed upon the Act of Congress, and it was not seen how, in rendering judgment for the one or the other of those sums, this equity of the contract could be administered. Finding, on appeal, that my brethren concurred in the construction placed upon the Act of Congress, I solicited their particular attention to the terms of the stated case with a view of seeing whether the enhancement of the cost of the rails by reason of Waterman & Beaver's neglect to pay duty on the pig-iron could be charged to Waterman & Beaver, and I understand them to be of opinion that the terms of the submission will not warrant such a modification of the judgment.

No question is supposed to be raised for our adjudication except the construction of the Act of Congress, and after considering all that has been urged on that head, I am instructed to affirm the judgment for the reasons given below.

The judgment is affirmed.