## A. SEIPLE, TO USE, v. G. H. SEIPLE ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 10, 1890—Decided March 24, 1890.
[To be reported.]

1. A bond and mortgage, taken for the same debt, are so far one that
a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties; wherefore, an acknowledgment upon the record of the mortgage of satisfac-

Case Stated.

tion in full thereof, without any mention of the debt or the bond, prima facie imports the extinguishment of the debt: Fleming v. Parry, 24 Pa. 47.

2. In a case stated, whatever is not distinctly and expressly set forth as admitted must be taken not to exist, and the court, from facts therein stated, cannot draw an inference of the existence of other facts not stated, even though, according to the rule of law, a jury may be bound to infer the existence of the latter upon receiving proof of the existence of the former.

(*a*) A case stated submitted to the court the validity of a voluntary transfer of an interest in a decedent's estate, as against an execution-attachment. It set forth that the judgment, on which the attachment issued, was recovered on the bond accompanying a mortgage after a foreclosure of the mortgage and a purchase of the land at judicial sale thereunder by the mortgagee, for a sum insufficient to pay the mortgage.

(*b*) It stated, also, that, after the recovery of the judgment and service of the attachment and after the voluntary transfer, the mortgagee sold the land so purchased, and, at the request of his vendee, satisfied the mortgage of record; but it contained no statement that the debt was not in fact paid, at the time of the satisfaction, or that it was the intention of the parties that the debt should remain notwithstanding the satisfaction:

3. The presumption of law being that the satisfaction of the mortgage worked an extinguishment of the debt, and the burden of removing that presumption being upon the creditor, the court was not at liberty to infer facts not stated, for the purpose of defeating the effect of the satisfaction; wherefore, upon the facts set out in the case stated, it must be held that the mortgagee, being no longer a creditor, cannot avoid the transfer.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 77 July Term 1889, Sup. Ct.; court below number and term not given.

In 1889, in the court below, an amicable action was entered between Amandus Seiple to the use of Hannah C. Seiple, plaintiff, and George H. Seiple, and Martin F. Seiple, administrators of Cornelius Seiple, deceased, defendants, the following facts being stated in the nature of a special verdict for the opinion of the court:

Whereas, judgment was recovered in the Court of Common Pleas of Northampton county by Cornelius Seiple, on March 25, 1878, as of April Term 1878, No. 10, for $3,718.92, upon which an attachment was issued by the said Cornelius Seiple

Case Stated.

against Amandus Seiple, defendant, and Cornelius Seiple, Jacob D. Seiple, and Martin A. Seiple, executors of Martin Seiple, deceased, as garnishees, which is now pending and undetermined ;. and Whereas, Hannah C. Seiple has applied to the Orphans' Court of Northampton county for a fieri facias against Cornelius Seiple, Jacob D. Seiple and Martin A. Seiple, executors of Martin Seiple, deceased, which is likewise now pending and undetermined, and the question raised in each of said cases is practically the same ; therefore, for the purpose of disposing of both the said cases and avoiding circuity of action, the parties in interest have agreed upon the following facts, and submit them to the court for judgment thereon, which said judgment is to be conclusive and final as to both the above recited cases, which are to be disposed of on the record by reference to this case stated, all the parties in interest however reserving the right to sue out a writ of error to the judgment entered in this case stated.

The following are the facts agreed upon :

1. Martin Seiple died seised, inter alia, of two farms situated in New Jersey, which on his decease were taken by his four sons, Cornelius, Amandus, Jacob D. and Martin A., the legal title of said farms being vested in Amandus by a deed dated May 20, 1865, for a consideration of $25,119.08. Subsequently, by an amicable partition and arrangement, Amandus deeded to Jacob D. Seiple the smaller farm by indenture dated February 6, 1869, for a stated consideration of $11,170.50.

2. Martin A. received in full for his interest in both farms a mortgage for $7,000, which was given by Amandus on the farm accepted by him. The mortgage was dated April 1, 1871, and was a first lien on the farm of Amandus.

3. Cornelius received two mortgages in full for his interest in both farms; one for $2,497.26 given by Amandus, and one for $4,502.04 given by Jacob D. The mortgage given by Amandus to Cornelius was dated April 1, 1871, and became a second lien on Amandus's farm.

4. The $7,000 mortgage was assigned by Martin A. to the International Life Insurance and Trust Company, who foreclosed it, and on December 20, 1875, Cornelius bought it at foreclosure sale for $9,000, which was $172.60 more than the principal and accrued interest on the $7,000 mortgage and

Case Stated.

costs of sale, which amount Cornelius credited on his own mortgage. At the time of the sale, the farm of Amandus was worth at a fair valuation $12,000.

5. Cornelius Seiple brought suit in Northampton county Common Pleas against Amandus Seiple as of April Term 1878, No. 10, for the balance due on the bond which was given with the $2,497.96 mortgage, and on March 25, 1878, he recovered judgment for $3,718.92 by the default of defendant.

6. On March 27, 1878, Cornelius Seiple issued an attachment in execution, No. 98 April Term 1878, against Amandus Seiple, defendant, and himself, Martin A. Seiple and Jacob D. Seiple, executors of Martin Seiple, garnishees, and attached Amandus's interest in his father's estate. This is the attachment suit above referred to and is still pending; no further proceeding being had, than the service of the writ of attachment, the return being "service accepted."

7. On January 14, 1878, Amandus Seiple made a voluntary assignment of his interest in his father's estate to Hannah C. Seiple, his wife, which assignment is recorded in . . . . ; and on October 15, 1887, the said Hannah C. Seiple presented her petition to the Orphans' Court of Northampton county for a fieri facias against the executors of Martin Seiple. This is the petition for fieri facias in the Orphans' Court recited above, and is still pending.

8. On October 9, 1878, the auditor's final report was filed in the estate of Martin Seiple, by which it appears that the balance due Amandus was $1,330.50.

9. At the time Amandus made this assignment to his wife he had no debts, except a few small ones, other than the indebtedness to Cornelius above recited; and all the property he had was his interest in his father's estate and some personal property, say about $300 worth. This personal property was more than sufficient to pay the few small debts he had, referred to above. Hannah C. Seiple, his wife, had no separate estate at the time of the assignment.

10. The New Jersey farm, bought by Cornelius at the foreclosure sale aforesaid, was afterwards, to wit, about 1886 or 1887, sold by his administrator, and at or about the time they executed deeds to the purchaser they satisfied the mortgage given by Amandus to Cornelius above referred to.

Opinion of Court below..

11. The executors of Martin Seiple, deceased, to wit, Cornelius, Martin A., and Jacob D. Seiple, filed an account of their trust in the register's office of Northampton county, alleged by them to be a just, true and final account as executors of the will of Martin Seiple, showing that the will had been duly executed and that no balance remained in their hands for distribution. This account was filed December 24, 1866, and is recorded.

12. On February 4, 1878, Amandus Seiple petitioned the Orphans' Court of this county for a citation to the executors of Martin Seiple to file an account final and complete. Upon this petition an auditor was appointed to find the fact and if necessary state an account, etc., whose final report shows a balance due Amandus of $1,330.50.

13. The administrator of Cornelius Seiple sold the farm, which their father bought at the foreclosure sale aforesaid, about the year 1886 or 1887, for $7,000 or $8,000. It was sold in the settlement of their decedent's estate, and the mortgage above recited was satisfied by them at the request of the purchaser. At the time of the foreclosure sale, there was a considerable amount of valuable timber upon the farm bought by Cornelius, which had been cut off at the time of the sale by the administrators of Cornelius.

14. If the court be of opinion that the assignment by Amandus to Hannah C., his wife, was good as against Cornelius Seiple and the other creditors of the said Amandus, then judgment is to be entered in favor of Hannah C. Seiple against George H. Seiple and Martin F. Seiple, administrators of Cornelius Seiple, deceased, for $1,330.50 with interest from October 9, 1878. But if the court be of opinion that the said assignment to Hannah C. Seiple was fraudulent as to Cornelius Seiple and the other creditors of Amandus Seiple, then judgment to be entered in favor of the defendants, costs to follow the judgment.

The court, SCHUYLER, P. J., after argument, entered judgment on the case stated for the defendants, delivering the following opinion:

" In a case stated, whatever is not distinctly and expressly agreed upon and set forth as admitted, must be taken not to

Opinion of Court below.

exist: " Berks Co. v. Pile, 18 Pa. 497. " The duty of the court
is to decide the case as stated, and to presume that what is not
included was kept out for sufficient reason : " Phila. etc. R. Co.
v. Waterman, 54 Pa. 341. " A presumption of one fact from
others is an inference of fact; and although, according to the
rule of law, the jury may be bound to make the presumption,
yet the court cannot make it without them : " Diehl v. Ihrie,
3 Wh. 143. These citations are pertinent to the contention on
behalf of the plaintiff that before the assignment in controversy
can be declared void, it must appear that it was made by Aman-
dus with intent to defraud his creditors. Upon the subject of
such intent, the case stated is silent; and, since the intention
with which an act is done is always a question of fact, as ruled
in Mateer v. Hissim, 3 P. & W. 166, we cannot infer it. If,
therefore, it is true that in order to avoid the assignment the
defendants must show affirmatively that it was made with the
intention to defraud creditors, judgment will have to be entered
in favor of the plaintiff. But is it true ?

Where a husband, having no debts at the time, or none that
are not fully secured, makes a voluntary settlement on his wife,
and the settlement is attacked as a fraud upon *subsequent* credi-
tors, the authorities cited by the learned counsel for the plaint-
iff indicate that the attacking creditors must show the existence
of an intention to defraud as a condition of success ; but, " when
it is established that, at the time of a voluntary settlement by
the husband on his wife, he was indebted to *any* amount, the
burden is upon those claiming under the settlement to show
solvency sufficient to establish that the settlement was not
covinous : " Woolston's App., 51 Pa. 452. There is nothing
unreasonable in this rule. It does not declare such a settle-
ment void, but simply casts upon the wife the burden of show-
ing the existence of circumstances rendering it valid. The
same principle as to burden of proof is applied in other cases.
" When a wife claims to hold property against the creditors of
her husband, the burden of proof is on her to show affirma-
tively, by clear and satisfactory evidence, that she did not ac-
quire it from him, or by her own labor or earnings : " Benson
v. Maxwell, 105 Pa. 277. And where there are suspicious cir-
cumstances attending a conveyance, tending to raise the infer-
ence of an intent to defraud creditors, the grantee must prove

consideration notwithstanding the receipt indorsed on the deed: Clark v. Depew, 25 Pa. 509.

With the question as to the burden of proof decided in favor of the defendants, there is nothing left for the plaintiff's case to rest upon. It is admitted that, at the time of the assignment, Amandus owed debts to the amount of $300, and that the value of his entire property at that time, outside of his interest in his father's estate, did not exceed that amount. It is also admitted that his interest in his father's estate, which he assigned, was worth $1,330.50. When we consider that by claiming the exemption he could remove all his unassigned property beyond the reach of his creditors, it goes without saying that the assignment was more than a reasonable provision for his wife, and being such, citation of authorities would be superfluous to show that it was fraudulent and void in law as to then existing creditors. It follows, by the terms of the case stated, that judgment must be entered for the defendants.

We reach this conclusion without reference to the question, so much discussed at the argument by the learned counsel for the plaintiff, as to whether Cornelius at the time of the assignment was a creditor of Amandus. The case stated seems to assume that he was, for it speaks of " Cornelius Seiple and the *other* creditors of Amandus Seiple." We take it, however, that this was a slip of the pen. But we think it immaterial whether he was or not. The judgment, stipulated for in the case stated, is not made to turn upon that question, but turns upon the question of the validity of the assignment, and as to that we have reached a decision without the help of Cornelius's claim.

But, we think that at the time of the assignment Cornelius was, and that his estate still is, a creditor to an amount exceeding twice told the amount of money in controversy. The fact that he bought the farm on which his mortgage rested, and that the farm was then worth more than the purchase money and his own mortgage combined, did not work an extinguishment of the mortgage debt: Hedge v. Holmes, 10 Pick. 380. To the same effect is the law in New Jersey, which must be accepted as controlling, and where it has been decided that " a purchaser of the equity of redemption by the mortgagee is not an extinguishment of the attendant bond : " Cattell v. Warwick, 1 Hal. L. 190.

Arguments.

It is unnecessary to inquire how the matter would have stood if Cornelius had bought the farm subject to his own mortgage, for that is not this case. Here the sale was under the first mortgage and its effect was to discharge subsequent liens. In Speer v. Whitfield, 2 Stock. 107, to which we have been referred, the sale was under a judgment subsequent to the mortgage. Nor can we say, as a conclusion of law, that the satisfaction of the mortgage, standing alone, without a surrender or cancellation of the accompanying bond, was a satisfaction of the bond. In Fleming v. Parry, 24 Pa. 50, the court below so said, and was reversed for so doing. Although Cornelius's conduct, in the settlement of his father's estate, is much to be condemned, we do not find in it enough to constitute an estoppel.

And now March 11, 1889, judgment is entered for the defendants.

—Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In entering judgment for the defendants and not entering judgment for the plaintiff.

*Mr. N. Dubois Chase* and *Mr. Simeon B. Chase*, for the appellant:

We contend that the plaintiff was entitled to judgment upon principles which do not conflict with the rule laid down by the court below, that an inference of fact cannot be drawn by the court from another fact. The court based its action, in casting on the plaintiff the onus probandi, because it was admitted that Amandus was indebted at the time of giving this assignment, upon Woolston's App., 51 Pa. 452. The burden was wrongly placed, it being incumbent on the defendants to show affirmatively an intention to defraud creditors.

1. Although by a slip of the pen the case stated speaks of " Cornelius Seiple and other creditors," we contend that Cornelius is not a creditor at all, and that the " other " creditors are not such as are within the ruling in Woolston's Appeal or any other case cited by the court. The assignment is good against the latter because they are not here questioning its validity or making any claim. A voluntary conveyance is not void simply because the maker of it is indebted; it is invalid only when questioned by a creditor whom it tends to defraud,

Arguments.

and only as against him : Statute of 13 Eliz. ch. 5, Roberts' Dig. 295; Mateer v. Hissim, 3 P. & W. 163; Benson v. Maxwell, 105 Pa. 277; Byrod's App., 31 Pa. 242; Kelly's App., 77 Pa. 232. Again; those other debts were neither of the right kind nor of sufficient amount· to cast the burden of proof on the plaintiff. The court was in error in saying that those debts amounted to $300. What was admitted in the case stated was that there were a few small debts, which the $300 worth of property was more than sufficient to pay; and it is fair to presume they were paid out of it, in view of the lapse of time and the fact that not one of those creditors have come forward. Small and inconsiderable debts, such as any man may owe, will not invalidate a conveyance : Clark v. Depew, 25 Pa. 511.

2. Cornelius Seiple's estate is not a creditor of Amandus. The farm sold in the foreclosure proceedings being of greater value than the amount of the mortgage debt, its purchase by Cornelius extinguished the debt, as well as the mortgage : 2 Jones on Mortgages, §§ 950–954; Speer v. Whitfield, 2 Stock. (N. J.) 107; Trimmer v. Wise, 43 Am. Rep. 624; Savings Bank v. McKinney, 78 Me. 442; Dooley v. Potter, 140 Mass. 49; Biggins v. Brockman, 63 Ill. 316. In Hedge v. Holmes, 10 Pick. 380, cited by the court below, the facts were very different from those of the present case, and Cattell v. Warwick, 1 Hal. L. 194, which was decided by a New Jersey court of law, recognized by implication the right of a court of equity to accord to such a purchase the effect we claim for it. The money here in controversy is in the custody of the Orphans' Court for distribution, and in the distribution our courts have plenary equity powers. Again; the satisfaction of the mortgage upon the record extinguished the debt, there being nothing to show that it was not intended by the parties to have that operation : Garwood v. Eldridge, 1 Green Ch. 145 (34 Am. Dec. 195); Bently v. Whittemore, 3 C. E. Green 366; Frazee v. Campbell, 1 Green Ch. 239; Gray's Est., 7 W. N. 542; West's App., 88 Pa. 341; Fleming v. Parry, 24 Pa. 50.

3. There is another reason why the estate of Cornelius should not be permitted to take this money. By so doing, it would enjoy the fruit of his own wrong. The money it claims was in the hands of Cornelius himself as a trustee for Amandus, from December 24, 1866, to October 9, 1878, and all that

time he concealed from Amandus the fact that any such money was due him. Having rendered a false account in 1866, he thereby induced Amandus to give him a mortgage for a greater amount than it would have been given for, had Amandus known that Cornelius owed him a balance of $1,330.50. His conduct thus contains all the elements of an estoppel, as laid down in Bigelow on Estoppel, 484. Cornelius evidently was satisfied with the mortgage as security, and his waiting to sue on the mortgage bond until Amandus commenced proceedings to have a new accounting, shows that he regarded the foreclosure of the mortgage as a satisfaction of the debt. In view of the divestiture of his wife's right of dower by the foreclosure sale, the act of Amandus in making this assignment was but a fair and just provision for her, which Cornelius ought not to be permitted to defeat. But, independent of the wrongful conduct of Cornelius, the existence of this mortgage debt is of no importance as to the validity of the assignment, because Cornelius had in the mortgage all the security he bargained for: May on Fraudulent Conveyances, 58. A fortiori, is this so in view of the value of the property. When there is no evidence of intention to defraud creditors, the fact that the property conveyed is all that the husband owned, is immaterial: Nippes's App., 75 Pa. 472; Williams v. Davis, 69 Pa. 27; Thompson v. Thompson, 82 Pa. 378.

*Mr. William Fackenthall* (with him *Mr. B. F. Fackenthall*), for the appellees:

1. The matters upon which the plaintiff contends for an equitable estoppel are irrelevant, and the question whether Cornelius was an unfaithful trustee is exclusively within the jurisdiction of the Orphans' Court. The assignment made by Amandus to his wife was fraudulent. While the law recognizes the wife as a proper person for the husband's bounty, it requires that a gift to her be confined to a proper proportion of his whole fortune, and that he retain sufficient to satisfy his creditors. Whether, even then, a gift to the wife of the entire remainder of his property would be valid in all cases, is doubtful.

2. In this case the wife had no claim upon the husband, either legal or equitable, excepting, of course, in her marital

relation; but that alone does not entitle her to her husband's property, either wholly or in part, as against existing creditors. The most that can be said is, that it will be a good ground upon which to base a gift of a reasonable part of the husband's means, when there are no creditors of any consequence : Thomson v. Dougherty, 12 S. & R. 448; Garrison v. Monaghan, 33 Pa. 232; Wilson v. Howser, 12 Pa. 109; Clark v. Depew, 25 Pa. 509; Coates v. Gerlach, 44 Pa. 43; United States v. Mertz, 2 W. 406.

3. The contention that the purchase by Cornelius at judicial sale not only discharged the lien of his mortgage but also extinguished the debt, is unsound. There is no method of making a valuation of land so purchased and crediting that valuation on the debt, and the creditor may proceed upon the bond to recover the portion of the debt left unpaid by the sale. But if it were so that in equity, and in New Jersey, the value of the property can thus be credited, this would be a matter of defence to be set up in the suit on the bond, and the debtor, if he omit to make such defence in that suit, cannot after judgment has gone against him, set it up in a collateral proceeding.

OPINION, MR. JUSTICE GREEN :

In the case of Fleming v. Parry, 24 Pa. 47, we said : " A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes and subject to remedies which are as unlike as personal actions and proceedings in rem, are, nevertheless, so far one that payment of either discharges both, and a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties." We said, also: " The court relied much on the words used in satisfying the mortgage. They were substantially, but not exactly, the words prescribed by act of assembly, but neither the debt nor the bond are mentioned: 'I, Andrew Fleming, do hereby acknowledge to have received satisfaction in full of this mortgage.' These words, signed and sealed by the mortgagee, were all-sufficient to put the mortgage out of existence, and sufficient, too, to satisfy the debt, if so intended. Prima facie, they would, indeed, import extinguishment of the debt as well as

the mortgage, and the burden of showing they were not so intended was on the creditor."

In the present case, all the facts are derived from a case stated. It is a perfectly well-established rule of practice that, " in a case stated, whatever is not distinctly and expressly agreed upon and set forth as admitted, must be taken not to exist: " Berks Co. v. Pile, 18 Pa. 493. And, again: "A case stated, when well drawn, is like an issue developed by special pleading, and presents in a single point, or in a series of points, the very matter that is up for judgment. The court cannot go beyond the issue that is thus brought upon the record, however manifest the justice that might be reached by going further. The duty of the court is to decide the case that is stated, and to presume that what is not included was kept out for sufficient reason: " Phil. etc. R. Co. v. Waterman, 54 Pa. 337. In Diehl v. Ihrie, 3 Wh. 143, we held that a presumption of one fact from others is an inference of fact, and, although, according to the rule of law, the jury may be bound to make the presumption, yet the court cannot make it without them. Mr. Justice SERGEANT said, in delivering the opinion: " Where, according to the rule of law, the jury are bound to make that presumption, it still remains an inference of fact. The circumstance that the jury are bound to make it does not render it matter of law, so that the court can draw the presumption. From evidence of any fact which in law is deemed conclusive, the jury are bound to infer the fact, and the court would so instruct them, and would grant a new trial if they refused. That would not authorize the court, in a common-law suit, to usurp the province of the jury, and adjudge, on a special verdict or demurrer, that the statement of the evidence proving a fact was equivalent to stating the fact thus proved."

The fund in controversy is a part of the estate of Martin Seiple, deceased, to which Amandus Seiple, one of his sons, was entitled on the settlement of the final account of the executors. The fund was claimed by the wife of Amandus Seiple, the use plaintiff in the present proceeding, by virtue of a voluntary assignment made to her by her husband, on January 14, 1878, of his interest in his father's estate; and, on the other hand, it was claimed by the administrators of Cornelius Seiple, a brother of Amandus, who had recovered a judgment for

$3,718.92 on March 25, 1878, against Amandus, on a bond for $2,497.96 given for owelty of partition by Amandus to Cornelius, and secured by a mortgage on certain real estate taken by Amandus in the partition of their father's real estate. The case stated declares that this mortgage was satisfied in 1886 or 1887 by the administrators of Cornelius, at the request of the purchaser of the real estate of Cornelius, which was originally taken in partition by Amandus and upon which the mortgage was a lien, but which had subsequently been bought by Cornelius upon foreclosure proceedings. The administrators of Cornelius claimed the fund by virtue of an attachment in execution issued on the judgment against Amandus on March 27, 1878. These administrators claimed that the assignment by Amandus to his wife, although made prior both to the judgment and attachment, was fraudulent and void against Cornelius, as being without consideration and intended to hinder, delay, and defraud creditors. The case stated simply sets forth the facts, but entirely omits to state that there was any intent to defraud creditors. The learned court below held that they could not infer such intent as against subsequent creditors, but that such an inference was not essential to defeat the assignment as against persons who were creditors of Amandus prior to and at the time of the assignment, and accordingly entered judgment for the administrators of Cornelius, who were defendants in the case stated, on the ground that Cornelius was a prior creditor.

Supposing this to be correct, the further difficulty with the case of the defendants, as it seems to us, lies in the fact of the satisfaction of the mortgage held by Cornelius for the security of the bond on which the judgment was obtained. The legal presumption is that the satisfaction of the mortgage works an extinguishment of the debt, and the burden of removing that presumption is thrown upon the creditor: Fleming v. Parry, supra. This is a presumption of law which necessarily flows from the fact of satisfaction set forth in the case stated, and, unless facts are averred in the case stated which rebut the presumption of extinguishment of the debt, the court cannot infer them. Now, upon an inspection of the case stated, we are unable to find any such facts. It is not averred that the debt was not, in point of fact, paid, nor that it was the intention of

the parties that the debt should remain, although the mortgage was satisfied. It is alleged that the mortgage was satisfied at the request of the purchaser of the land, but, as such a request would be entirely consistent with the fact of actual payment, we can make no inference of non-payment on that account. It is not even alleged in the case stated that the administrators of Cornelius still hold the bond of Amandus, or that Cornelius held it at the time of his death; but it is alleged that no further proceedings were ever had on the attachment after the service of the writ, which took place in 1878, eight or nine years before the mortgage was satisfied. In order to sustain the attachment and its claim upon the present fund, we would be obliged to infer, without any averment to that effect in the case stated, that the debt still exists, notwithstanding the entry of satisfaction on the mortgage given to secure that same debt. Had the judgment been obtained after the entry of satisfaction was made, it might have rebutted the presumption of payment growing out of the satisfaction; but the facts are precisely the other way, and the satisfaction, occurring long after the judgment, presumably extinguishes it, as well as the mortgage. We are not at liberty to make an inference of non-payment to defeat the effect of the satisfaction, and must therefore render judgment in favor of the plaintiff.

> The judgment of the court below is reversed; and judgment is now entered on the case stated in favor of the plaintiff, and against the defendants, for the sum of $1,330.50, with interest from October 9, 1878, amounting, in the whole, to $2,245.31, with costs; and the record is remitted for further proceedings.

May 5, 1890, motion for re-argument refused.