## City of Easton v. Leeds.

*Constitutional law — Interstate commerce — Municipal ordinance — Case stated.*

1. A municipal ordinance under which a license fee is required from a soliciting agent of a non-resident corporation, which corporation reserves the right to accept or reject an order, cannot be enforced as against such agent, even though he delivers a portion of the articles subscribed for and receives a portion of the subscription money. Such an ordinance is invalid as to him, being an attempt to interfere with and regulate interstate commerce.

2. In a case stated, the judgment must be based upon the facts agreed upon by the parties, and upon no others.

Case stated. C. P. Northampton Co., July T., 1923, No. 20.

*Newton R. Turner*, City Solicitor, for plaintiff.

*T. McKeen Chidsey*, for defendant.

STEWART, P. J., Nov. 5, 1923.—The defendant was convicted before an alderman'for a violation of an ordinance of the City of Easton. He presented a petition for an appeal. A rule to show cause was allowed, and, pending the rule, an agreement was entered into that the appeal should be allowed, and a case stated was filed. From the case stated it appears that: "The said city on Dec. 27, 1920, enacted an ordinance entitled 'An ordinance providing for and regulating the assessment, levy and collection of annual license taxes upon trades, businesses, callings, occupations, matters and things within the limits of the City of Easton, Pennsylvania; the granting of permits and licenses therefor, and imposing penalties'for the violation of this ordinance;' the name of said ordinance, under section 2 thereof, being 'General License Ordinance of the City of Easton, Pa.' Section 21 of said ordinance provides that: 'The respective classifications and amounts of license taxes to be paid to the city treasurer therefor'and to secure license in the City of Easton shall be as follows: . . .' 'Class 31. Traveling or transient agents. Selling or soliciting orders from house to house, from catalogue or sample, and owners or 'agents with sample or display rooms selling at retail from samples, of advertising, toilet articles, medicines, brooms, cigars, furs, clothing, silks, dry goods, shoes, merchandise, novelties of all kinds and descriptions, books, magazines, periodicals, study and musical courses, etc., 'having no licensed place of business in the city nor being entitled by law to sell without license, shall pay a license tax 'of $25 per year, or for a short term, in accordance with street sales. Permit shall be necessary to secure such license, provided, however, that a permit from the mayor is sufficient without license, where such agents represent a duly licensed concern privileged under the laws of interstate commerce to take orders without payment for goods to be delivered by 'a common carrier and paid for through the usual office methods. . . .' 'Any person or persons, firm or corporation violating any of the provisions of this ordinance, upon conviction thereof before the mayor or any alderman or magistrate of 'the city, shall pay a fine not exceeding $100, and in default of payment thereof shall be committed to city prison or Northampton County prison for a period of not exceeding ninety days.' " That the Crowell Publishing Company 'was a corporation organized under the laws of the State of Delaware, owning a publishing plant in Springfield, Ohio, where it published certain magazines, including the Woman's Home Companion, Collier's and the American Magazine; that it employs soliciting agents and collecting agents; that it has clubs of subscribers to its magazines; that, upon joining a club, the subscriber pays a certain amount to 'the soliciting agent, and thereupon receives first copies of the magazine ordered; that first payment

City of Easton *v.* Leeds.

is not equivalent to the retail price of the first copies so delivered; that thereafter the copies are sent weekly or monthly by mail to the subscribers, and that collections for the subscriptions are made monthly; that the subscriptions are not accepted by the agent, but are forwarded to Springfield, Ohio, where the contracts are accepted; that defendant, Francis E. Leeds, was a soliciting agent of the Crowell Publishing Company, and obtained an order from Nellie M. Rebert, a citizen of Easton, and received a first payment from her. At the time he received the subscription, neither the defendant nor the Crowell Publishing Company had procured a license under the ordinance aforesaid. The Crowell Publishing Company had a branch agency in Scranton, Pa., but it did not accept the orders or keep any magazines in store for the purpose of delivering them to the subscribers. Its sole function, it was agreed, was the employment and supervision of the agents aforesaid. The defendant's contention is that the ordinance of the City of Easton is not applicable to him, he being engaged in interstate commerce. A copy of the order is as follows:

*Woman's Home Companion Reading Club, Group No. 12,*
*518 Miller Building, 420 Spruce Street, Scranton, Pa.*

MEMBERSHIP RULES

The Woman's Home Companion
Reading Club

Backed by the Crowell Publishing
Company, of New York

Guarantees that the magazines named below will be mailed regularly to the subscriber's address;

That any missing numbers will be duplicated if possible;

That in case missing numbers cannot be duplicated, the term of subscription will be extended.

The Subscriber agrees:

To pay the collector 65 cents per month regularly for 16 months, in addition to 65 cents paid to salesman for the first magazines delivered:

To notify Woman's Home Companion Reading Club of any change of address:

To send remaining payments by mail if new address is outside of collection district.

Signature: Nellie M. Rebert
Street Number: 107 No. 10th St.
City, Easton, Pa.
Occupation.

Pay salesman 65 cents on delivery of first copies.

Pay Collector 65 cents each month for 16 months and nothing the remaining eight months.

The first payment of 65 cents entitles the subscriber to first copies of all magazines ordered in connection with 24 months' subscription to the Woman's Home Companion and The American Magazine and Colliers.

(Date)..................

I hereby subscribe for the following named magazines on the terms stated herein, for the time stated below. I have paid your salesman 65 cents to join your club, and I have received the first copies of each of the magazines below named. I understand that failure to receive one or more of these magazines (due to error or accident) is not sufficient reason for refusing to make regular monthly payments and that I may not cancel this order.

Woman's Home Companion
   for two years (24 issues.)
   Begin July.

American Magazine
   for two years (24 issues.)
   Begin July.

Collier's
   for two years (104 issues.)
   Begin in 30 days current.

Salesman F. E. Leeds
Business Address
Verified              Field Mgr.
Subscriber's
Verification Signature

No Verbal
Alterations
Recognized

NOTICE: Not responsible for more than 65 cents paid to salesman. Notify the club in case you miss any of the magazines ordered.

NO CHANGES WILL BE MADE IN SELECTION OF MAGAZINES AFTER ORDER IS ENTERED.

No. 8

It would seem to us that we could safely rest this decision upon the learned and exhaustive opinion of President Judge Sadler, in Mt. Holly Springs 4 D. & C.

Borough v. Wilt, 43 Pa. C. C. Reps. 566. That case, on its facts, is very similar to the present case. Judge Sadler has reviewed all the authorities, both in the higher courts of this State and in the Supreme Court of the United States. Whatever may have originally been the views of the higher courts of this State, the Supreme Court of the United States has finally settled the question. The learned counsel for the City of Easton, however, sought to differentiate this case from the cases usually relied on by pointing out that the order refers to the Woman's Home Companion Reading Club, Group No. 12, 518 Miller Building, No. 420 Spruce Street, Scranton, Pa. He contended that the club is the principal and that it guarantees to do certain things; that there was a delivery of the first copies to the subscriber and a payment by her; and that these facts make it a Pennsylvania transaction. A sufficient answer would be to refer to the fact agreed on in the case stated, that the orders were not complete until accepted in Springfield, Ohio, and to the further fact that the Scranton branch only had jurisdiction over the agents. The principle that applies is that the judgment must be based upon the facts agreed upon by the parties, and no others: The Phila. & Reading R. R. Co. v. Waterman et al., 54 Pa. 337; Northampton County v. Easton Pass. Ry. Co., 148 Pa. 282; Mutchler v. City of Easton, 148 Pa. 441. However, an examination of the cases referred to by the counsel in this case and by Judge Sadler shows that that was the usual agreement relied on by the various state supreme courts in deciding the cases in favor of the citizens interested, but that the Supreme Court of the United States refused to sustain those positions, and held uniformly that the mere fact that the agent made a delivery was not significant, nor does the fact that the real principal had a sub-agency in the state control. In Caldwell v. North Carolina, 187 U. S. 622, 47 Law Ed., 336, Mr. Justice Shiras, after quoting from the opinion of the Supreme Court of North Carolina, said: "We are not persuaded by this reasoning. It seems to proceed upon two propositions: First, that the pictures in question were not completed before they were brought to Greensboro; and, second, that the articles were not shipped directly to the purchasers, but to an agent of the senders in Greensboro. But it certainly cannot be pretended that, if the pictures and the disconnected frames had been directly shipped to the purchasers, the license tax could have been imposed, either on the vendor out of the state or on the purchaser within the state. If the pictures and the frames intended for them had been shipped directly to the purchasers, whether in the same or separate packages, such a transaction would, beyond question, be interstate commerce beyond the reach of the taxing power of the state. It is too plain for argument that the supposed incomplete condition of articles of commerce, if shipped directly to the purchasers, cannot subject them to the license tax. . . . Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. It would seem evident that if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight, by rail, and were received at the railroad station by an agent, who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate. Transactions between manufacturing companies in

one state, through agents, with citizens of another constitute a large part of interstate commerce; and for us to hold with the court below that the same articles, if sent by rail directly to the purchaser, are free from state taxation, but, if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate commerce clause of the Constitution. It cannot escape observation that efforts to control commerce of this kind in the interest of the states where the purchasers reside have been frequently made in the form of statutes and municipal ordinances, but that such efforts have been heretofore rendered fruitless by the supervising action of this court. The cases hereinbefore cited disclose the truth of this observation." In the late case of Stewart v. Michigan, 232 U. S. 665, where there was a statute similar to the ordinance in suit, the facts were: Orders were solicited by one who resided in Chicago for groceries and other merchandise from his store in that city. The orders taken were sent to the store and shipped in carload lots, consigned to him at different points in Michigan; upon arrival of the cars, they were delivered to the customers by draymen employed by the seller, who filled the orders at the car by checking from the original orders—there being no identifying marks on the packages except as to their contents. If, for any reason, any orders were undelivered, the goods corresponding to such orders were returned to the Chicago store, or placed in a storeroom which the owner had hired in a town in Michigan. Occasionally sales were made from the storeroom and from the car without previous solicitation. No license having been taken out by the solicitor of the orders, he was convicted, and this was affirmed by the Supreme Court of Michigan. Chief Justice White delivered the opinion of the Supreme Court of the United States, on appeal to it, holding the statute unconstitutional as applied to the act complained of, as it was interstate commerce. It will be observed that in that case the court recognized the right of the resident of one state to have a storehouse or depository of the goods he wishes to dispose in another commonwealth located therein. Other decisions to the same effect might be cited. The facts of the present case do not differentiate this case from any others. The principle is that no state and no municipal corporation have authority under the Constitution of the United States to place any burdens or clogs upon those engaged in interstate commerce.

And now, Nov. 5, 1923, judgment is entered for the defendant.

From Henry D. Maxwell, Easton, Pa.