[PHILADELPHIA, JANUARY 29, 1838.]

## DIEHL and Others *against* IHRIE.

### IN ERROR.

1. A case stated for the opinion of the Court, ought, like a special verdict, to contain facts, and not the mere evidence of facts.
2. A presumption of one fact from others, is an inference of fact; and although according to the rule of law, the jury may be bound to make the presumption, yet the Court cannot make it without them.
3. Where a case was stated for the opinion of the Court below, setting forth that the ancestor of the defendant executed a bond to the plaintiffs' testator more than twenty years before the bringing of the suit, and setting forth also various circumstances alleged by the plaintiffs as sufficient to repel the presumption of payment arising from the lapse of time; and the Court below, on this case, gave judgment for the plaintiffs; the Supreme Court, on error, reversed the judgment; and remitted the case to the Court below for further proceedings.

THIS was a writ of error, to the Court of Common Pleas for the *county of Northampton, to remove the record of an [*144] action between Peter Ihrie, Jr. executor of the will of George Ihrie, deceased, plaintiff, and William Diehl and Maria his wife, late Maria Otto, Charles Otto, John Otto, Reuben Otto, Daniel Lewis Otto, Michael Otto, and Catharine Otto, children, and legal representatives of John Otto, deceased, and terre-tenants, defendants.

The action in the Court below was a *scire facias*, upon a judgment obtained at January Term, 1812, by George Ihrie, Esq., in his lifetime, against John Otto, in his lifetime, to revive the said judgment against his children and representatives.

The cause was arbitrated, and on the 12th of August, 1836, an award filed in favour of the defendants; and on the 13th of the same month, the plaintiff below appealed from the award.

On the 2d of December, 1836, the following case, containing the facts, was stated for the opinion of the Court, as follows:

On the 31st March, 1821, George Ihrie sold to John Otto a lot of ground in Williams township, Northampton county, for which he executed a deed, dated the 31st March, 1812, acknowledged on the 20th April, 1812, and recorded on the 29th April, 1812, (in Deed Book H. vol. 3, page 12,) upon which, in a few years thereafter, the said Otto erected a small farm-house.

On the 10th of April, 1812, John Otto executed a judgment bond to George Ihrie, conditioned for the payment of $100 as follows, to wit, $50, part thereof, on the 1st of April, 1813, and $50, the remainder thereof, on the 1st of April, 1814, in part of the consideration for the said lot.

On the 17th of April, 1812, judgment was entered on the said

(Diehl *v.* Ihrie.)

bond, in the Court of Common Pleas of Northampton county, as of January term, 1812, No. 83.

On the 27th of April, 1826, John Otto presented and filed his application for the benefit of the insolvent laws of this commonwealth, and was discharged in pursuance thereof, on the 20th day of May, 1826 ; and Samuel Bittenbender appointed his trustee in trust for the benefit of his creditors ; but he never assumed the duties of the trust. George Ihrie is not mentioned as a creditor in this petition.

On the 28th of July, 1826, John Otto died leaving a widow and seven children, the defendants in this cause. John Otto continued in possession of said lot to the time of his death, and the defendants, his widow and children, still hold it.

[*145] *Up to the period of his decease, the said Otto was a poor man ; having no visible property except the lot aforesaid, and some articles of household and kitchen furniture.

On the 17th of January, 1835, the death of George Ihrie, Esq. was suggested upon the record, and his executor, the plaintiff in this suit, substituted.

On the same day, to January term, 1835, the *scire facias* in this case was sued out and returned, " served" on all the defendants, to wit, William Diehl, and Maria his wife, late Otto, Charles Otto, John Otto, Reuben Otto, Daniel Lewis Otto, Michael Otto, and Catharine Otto, the children, and Catharine Otto the widow of the said John Otto, deceased.

On the 19th of April, 1811, John Otto aforesaid, eldest son of John Otto, deceased, accepted the real estate of his father, at the valuation thereof in the Orphans' Court, viz. $750, and entered into bonds for the payment of the widow's yearly interest, and the share of the other children, with the said George Ihrie, and Philip H. Mattes, as his sureties.

On the 19th of April, 1811, John Otto and wife, by their deed of the said date, conveyed the premises as aforesaid, by him accepted in the Orphans' Court, to George Ihrie for $750 ; and it is admitted that the said Ihrie has since paid off the aforesaid bonds to the said children, &c.

On the same 19th of April, 1811, George Ihrie gave his bond to John Otto, conditioned for the payment of $143 81 payable as follows, viz. $95 87½ part thereof, on 19th April, 1812, and $47 93½ the remainder, at and immediately upon his mother's death.

On this bond appears this endorsement :

" Received April 4, 1812, from George Ihrie, Esq., forty-six dollars, and forty-six cents, in part payment of the within bond.
                                        JOHN OTTO."

(Diehl *v.* Ihrie.)

" Received, April 10, 1812, from George Ihrie, Esq., forty-nine dollars, and forty-one cents, in full, of the first instalment of the within bond.

JOHN OTTO.

Attest.
PHILIP H. MATTES."

" Received, February 19, 1813, from George Ihrie, Esq., twenty-five dollars, in part of the money, secured by the within *bond as to be paid after my mother's decease; which twenty-five dollars are to bear interest from this date until the within last payment becomes due.

[*146]

I say received by me,

JOHN OTTO.

Attest.
PHILIP H. MATTES."

On the 4th of May, 1811, George Ihrie, executed and delivered to the said Otto, the following indemnity.

" I do hereby promise, that I will keep John Otto, eldest son of John Otto, late of Williams township, deceased, free and clear, of and from any payment that he has to make to his mother or either of his brothers and sisters, respecting the real estate of his deceased father, adjudged to him the 19th April last past; and also from all suits and costs respecting the same; he having conveyed the same to me by deed. Witness my hand, May 4, 1811.

GEO. IHRIE.

Attest.
PHILIP H. MATTES."

George Wolf, Esq. being sworn as a witness, said: " This bond was in my possession for some time, and I confessed judgment upon it, No. 83, of January term, 1812. It was in my possession from the time I received it until after the death of George Ihrie, Esq., and was by me handed over to Col. Ihrie, as his executor. Mr. Otto never paid any money to me on this bond, nor to Esq. Ihrie to my knowledge. To the best of my knowledge, Otto never alleged to me that he had made payment of the money; nor did he ever demand the bond from me. He never asked it to be cancelled to my knowledge."

Cross-examined. " I do not recollect that I ever had any conversation with Mr. Otto about the bond. The bond in question is dated 10th April, 1812, and witnessed by Philip H. Mattes."

The record of the original judgment, and all the proceedings under the same; the judgment-bond aforesaid, as also the appli-

cation of John Otto for the benefit of the insolvent laws, and all the proceedings under the same; the deposition of George Wolf, Esquire, which is filed of record in this suit, and the deeds before mentioned; likewise the bond executed by George Ihrie, Esq. on the 19th April, 1811, and the endorsements on the same; as also the indemnity above described, are all considered part of this statement, and the whole to be considered in the nature of a special verdict; with liberty to either party to take out a writ of error.

[*147]    If the Court shall be of opinion from the foregoing facts, that the plaintiff is entitled to judgment, then judgment is to be entered accordingly in his favour. On the contrary, if the Court shall be of opinion that the plaintiff is not entitled to judgment, judgment to. be entered for the defendant accordingly."

The Court (Banks, President) ordered judgment to be entered for the plaintiff on the case, and expressed their opinion, in substance, as follows:

"The original judgment was entered on the 17th of April, 1812. The debt was $100, of which $50 was payable the 1st of April, 1813, and $50 the 1st of April, 1814. The *scire facias* was issued on the 17th of January, 1835, a period of more than twenty years after the entry of the judgment, and more than twenty years after the debt was due. From this length of time, the law would presume the judgment satisfied. This presumption is not conclusive evidence that the debt has been paid. It is *prima facie* evidence of its payment, and casts the burthen on the plaintiffs of removing the presumption by countervailing proofs. Are there any circumstances in this case which do countervail this presumption? This is the only point in the cause which has been brought to our notice. The only circumstance which can raise a question is the fact that the defendant was insolvent. The principle upon which the presumption of payment arises from lapse of time alone is a reasonable one, and may be overturned and nullified by any fact which destroys the reason of the rule itself.

It is reasonable to presume that a man will pay his debts in twenty years, but you remove all reasonable ground to presume this, by proving that the debtor was unable to pay. It is not reasonable to presume that an insolvent man will pay his debts. Proof that the debtor was not in circumstances to pay, would be proper to go to a jury, and from which they might say that the debt was not discharged. This itself would remove the presumption of payment from lapse of time. Here the debtor actually took the benefit of the insolvent laws in 1826. It appears that the judgment creditor was not returned as being a creditor at

(Diehl *v.* Ihrie.)

that time, nor did he return the property bound by this judgment, though it was confessed by him at the time. Then this does not amount to much, either way. It is the act of the defendant alone. It does not make much for the defendant. If the case had been submitted to a jury, and the facts stated had been proved before them, they might very correctly have said by their verdict, that the debt was not paid, and the Court would have been bound to tell them so. If the jury might so have found, it is our duty so to decide; for whatever a jury might have done with propriety on the *same* facts proved, the Court may with as much propriety do, *on* similar facts stated for their opinion. There is a great variety of circumstances by which *the presumption of payment from lapse of time may be repelled. All the books and all the cases unite in the [*148] doctrine, that the insolvency of the debtor is one of these circumstances. That being the well established rule of law, and it being made part of the case, that the debtor was insolvent, we must give judgment for the plaintiffs, as this is the only point made in the argument. The Court accordingly gave judgment for the plaintiffs on the case stated."

A writ of error was taken to reverse this judgment; and now

Mr. *Porter* argued for the plaintiff in error. In this case 20 years expired after the bond fell due before the *scire facias* issued. This is such a lapse of time as raises a presumption in law of payment, whether the debt be secured by bond, mortgage, or judgment. *Cope* v. *Humphreys,* (14 Serg. & Rawle, 15); *Diemer* v. *Sechrist,* (1 Penn. Rep. 420); *Foulk* v. *Brown,* (2 Watts, 215); *Power* v. *Hollman,* (2 Watts, 219). After this lapse of time, it lies on the plaintiff to prove such facts and circumstances as will satisfy the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. Then are there any such circumstances here? The principal fact relied on, viz. the discharge of the obligor under the insolvent law, is not sufficient. It is settled, that this does not prevent the running of the statute of limitations. *Sletor* v. *Oram,* (1 Whart. Rep. 106); *Power* v. *Hollman,* (2 Watts, 219). In *Foulk* v. *Brown,* it was held, that the circumstance of the husband of a *feme covert* legatee who died, not having taken out letters of administration, was not sufficient to bar the presumption.

Mr. *Ihrie,* in support of the judgment below, cited *The Mayor of Hull* v. *Horner,* (Cowper, 109); *Summerville* v. *Holliday,* (1 Watts, 518); *Bolts* v. *Bullman,* (1 Yeates, 584); *Hays* v. *Shannon,* (5 Watts, 548); *Delany* v. *Robinson,* (2 Wharton's Rep. 503).

(Diehl *v.* Ihrie.)

The opinion of the Court was delivered by

SERGEANT, J.—According to the English practice, a special case is used instead of a special verdict. It is a species of special verdict. The jury find generally for either party, but subject to the opinion of the Court, on a special case (stated by the counsel on both sides, or dictated by the judge), with regard to a matter of law. Leave is sometimes given to turn it into a special verdict. But in a special case, as in a special verdict, the facts proved at the trial ought to be stated, and not merely the evidence of facts. In arguing a special case, the counsel are not permitted to go out of it, and the Court must judge upon it as stated. If it be so defective, that the Court are not able to give judgment, they will grant a new trial, in order to have it restated. 1 Tidd's Prac. 930; 1 Arch. Prac. 192.

[*149] *Under our practice, a special case, or as it is usually termed, a case stated, has been more extensively used. The parties, where a real contest exists, may enter an action by amicable agreement, and in that action, or in one brought by process issued, may agree to state certain facts for the opinion of the Court; and if they desire to have the benefit of a writ of error, may insert in their agreement that it shall be in nature of a special verdict. 8 Serg. & Rawle, 529. The rule, however, as to the duty of stating the facts only, and not the evidence of facts, and of submitting to the Court only questions of law, is the same here as in the English practice. Ib. 4 Watts, 312. *Ad questiones facti non respondent judices.* It would be a departure from established principles, and from sound policy, to allow the parties to submit to the determination of the Court, anything else than questions of law.

A presumption of one fact from others is an inference of fact. Whether in a given case the jury ought to make that presumption, is a question of law. Where, according to the rule of law, the jury are bound to make that presumption, it still remains an inference of fact. The circumstance that the jury are bound to make it, does not render it matter of law, so that the Court can draw the presumption. From evidence of any fact which in law is deemed conclusive, the jury are bound to infer the fact; and the Court would so instruct them, and would grant a new trial if they refused. That would not authorize the Court, in a common law suit, to usurp the province of the jury and adjudge on a special verdict or demurrer, that the statement of the evidence proving a fact was equivalent to stating the fact thus proved. So, in the cases of presumptions. After twenty years, bonds and other instruments not within the statute of limitations, are presumed or inferred to have been paid; but that is an inference which the jury must make—the Court charging as to what is the

(Peterson *v.* Haight.)

rule of law. Though it may appear at first to be singular to require a jury to find an artificial presumption, and not for the Court itself to draw it, (see 2 Stark. Evid. 675,) yet is no more than results from our mixed tribunal of Court and jury, in which each performs its own function without encroaching on the peculiar jurisdiction of the other.

As the making a presumption of one fact from other facts is thus a matter which belongs to the jury, so do the circumstances which go to repel that presumption; as for instance, to show that payment has not been made. And here the same division of duty occurs. Whether, in point of law, the circumstances proved are sufficient to repel the presumption, is for the Court to determine; but whether they do in fact repel it, is for the jury to find by their verdict.

I am therefore of opinion, on the case here stated, that the Court below erred in deciding on the effect of the circumstances *set forth in repelling the alleged presumption; and that it could only be done by a jury, with the aid of the [*150] Court, by means of a verdict; and therefore the judgment below must be reversed, and the case remitted to the Court below to proceed in.

Judgment reversed.

Cited by Counsel, 2 Watts & Sergeant, 370; 5 Id. 209, 331; 9 Harris, 293; 5 P. F. Smith, 291; 2 Ashmead, 218.
Cited by the Court, 8 Watts, 288; 10 Wright, 267; 8 P. F. Smith, 463.
See also, 9 Harris, 310; 2 Grant, 35.