# McCleery *v.* Stoup, Appellant.

*Vendor and vendee—Judgment—Lien—Legal title.*

A judgment entered against a vendor who has sold land by articles of agreement, but who still retains the legal title, becomes a lien against any estate remaining in the vendor evidenced by that title.

If the vendor either in the agreement of sale itself, or at any time thereafter but prior to the entry of the judgment, in good faith, and for a lawful consideration to him moving, assigns and transfers to another, or to one in trust for a number of others, all of the unpaid purchase money, then the legal title remaining in the vendor is stripped of every incident and element of value to him, and there will be nothing upon which the lien of a judgment against him can fasten. He will then hold but the naked legal title in trust for his vendee, if the terms of sale are complied with, or for those who had succeeded to his own rights in the purchase money if it becomes necessary for them to use it to enforce those rights.

Where a vendor in good faith assigns the purchase money of the land to the vendee to be by him applied in payment or settlement of the vendor's debts, the transaction amounts to an assignment of the purchase money, and no title to it will remain in the vendor, to which the lien of a judgment against him can fasten.

The assignment of a chose in action or of a fund need not be by any particular form of words, or particular form of instrument. Any binding appropriation of it to a particular use by any writing whatever is an assignment of a transfer of the ownership.

Argued May 15, 1906.    Appeal, No. 90, April T., 1906, by defendant, from judgment of C. P. Butler Co., Sept. T., 1905, No. 48, for plaintiff on case stated in suit of F. W. McCleery & Co. *v.* J. R. Stoup.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Reversed.

Case stated to determine the lien of a judgment.    Before GALBREATH, P. J.

The case stated was as follows :

1. That Samuel A. Purvis on September 19, 1903, by deed from Archie McDonald and Margaret McDonald, his wife, became the owner of a certain lot of ground situate in the borough of Valencia, Butler county, Penna.

2. That on October 8, 1903, the said Samuel A. Purvis

and Jessie M. Purvis, his wife, joined in a mortgage to George F. Keck, on the aforesaid lot for $1,000, payable in three years at six per cent interest, and that $775 of the debt thereby secured remains unpaid and a lien on the lot therein described, with interest from October, 1904.

3. J. W. Huston & Company on June 11, 1904, at common pleas No. 14, September Term, 1904, book 99, page 59, entered a judgment against Samuel A. Purvis for $350 and costs, which was by payments and compromise reduced to $118.10, which includes balance of debt and costs and was a lien against the lot aforesaid on April 26, 1905, which $118.10 was paid in full by J. R. Stoup and satisfied by the plaintiffs, J. W. Huston & Company.

4. The Leedom & Worrel Company, on April 24, 1905, at C. P. No. 140 and 141, June Term, 1905, book No. 100, pages 114 and 115, entered two judgments against Samuel A. Purvis, one for $200 and one for $100, with interest from February 20, 1905, costs and attorneys' commission.

5. On April 26, 1905, Samuel A. Purvis and Jessie M. Purvis, his wife, made and entered into a written article of agreement with J. R. Stoup for the sale of the lot of ground aforesaid, which was recorded on April 29, 1905, in Deed Book No. 232, page 133, a copy of which is hereto attached and marked exhibit "A."

6. That F. W. McCleery & Co., plaintiffs in this suit, on April 27, 1905, at C. P. No. 145, June Term, 1905, Book No. 100, page 117, entered judgment against Samuel A. Purvis for $265.64, costs and attorneys' commission, on a judgment note dated April 15, 1905, on which judgment J. R. Stoup, under his written agreement of April 26, 1905 (exhibit "A"), on May 22, 1905, paid J. W. Hutchison, attorney for plaintiff, $132.82, attorneys' commission $13.28, and costs $4.50, in all $150.60, leaving $132.82 of the judgment remaining unpaid and which has not since been paid. At the time of this payment a written agreement was made between the attorneys for the parties in this case, as follows: Should it be decided by the court that by reason of the judgment entered for $264.64, the plaintiffs, F. W. McCleery & Co., are entitled to any preference over other creditors, then the plaintiffs are to be paid the amount of that preference. At the time of the entry of said

judgment of the McCleery company there was a balance of purchase money still owing by J. R. Stoup on this agreement in excess of the amount of the claim of the McCleery company.

7. That if the court be of the opinion and decides that by reason of the judgment entered by the plaintiffs on April 27, 1905, for $265.64, they have a preference over the other unsecured claims mentioned in the article of agreement of April 26, 1905 (exhibit "A"), then judgment be entered for the plaintiffs against the defendant for $132.82 and interest and costs; but if the plaintiffs are not entitled to preference over the other creditors who have no liens of judgments or mortgages, then the plaintiffs to have pro rata with the other creditors on their judgment of $265.82, allowing a credit to J. R. Stoup thereon for the amount paid, $132.82, costs, $4.50, and commission, $13.28, in all $150.60, either party reserving the right to sue out a writ of error or take an appeal.

## " Exhibit ' A.'

" Article of Agreement made and entered into this 26th day of April, 1905, between Samuel A. Purvis and Jessie Purvis, his wife, of Valencia, Butler County, Pa., parties of the first part, and James R. Stoup, of the same place, party of the second part, as follows, to-wit: The parties of the first part for and in consideration of seventeen hundred dollars, to be paid as hereafter stipulated, agree and bind themselves, their heirs and assigns, to sell and convey to the party of the second part all that lot and piece of ground situate in the Borough of Valencia, Pa., bounded on the north by Maratta, on the east by street and B. & O. Railroad, on the south by hotel property of Mrs. Ludwig, on the west by J. D. McGee, the same being 50 x 150, the same being the lot lately used by Samuel A. Purvis as a store room, with warehouse, stable and other out-buildings thereon, and which is now being used and occupied by the second party as a store room. The said consideration money to be paid as follows, the party of the second part to assume and as part of the consideration a balance of a mortgage to George S. Keck, of seven hundred seventy-five dollars ($775.00) and ($30) thirty dollars annual accrued interest thereon, in all eight hundred five dollars ($805.00), two judgments of Leedom & Worrel aggregating ($300.00) three hundred dollars and costs,

judgment of Huston & Co., ($113.00) one hundred thirteen dollars. The parties of the first part also assign and transfer to the party of the second part, all their book accounts except the account of Samuel Daubenspeck, ($33.05) thirty-three 5-100 dollars and Samuel Emerick ($28 84-100) twenty-eight 84-100 dollars. The books to be placed in the hands of Edgar H. Negley, Esq., who is to collect the same and pay over to the creditors of the party of the second part or to the unsecured creditors of the said Samuel A. Purvis; and it is further agreed to by the parties that four hundred eighty-two dollars, or whatever the balance after paying pro rata the secured creditors before mentioned, be paid in settlement of unsecured claims which may or in any be held to be a claim against this property or against the store sold by the first party to the second party on April 7th, 1905."

The unsecured claims being understood to be as follows:

| | |
|---|---:|
| Leedom-Worrel Co., Butler, Pa. | $119.00 |
| McCleery Co., Pittsburg | 264.00 |
| Arbuthnot & Stevenson, Pittsburg | 200.00 |
| Levett & McConnell, Youngstown, O. | 219.00 |
| National Biscuit Co., Pittsburg, Pa. | 45.00 |
| L. A. Butler, Pittsburg, Pa. | 51.00 |
| Loyd & Co., Butler, Pa. | 30.00 |
| Leedom-Worrel Co., Butler, Pa. | 37.00 |
| Openheimer, Pittsburg, Pa. | 51.00 |

When the consideration money is paid and settled in full, deed in fee simple will be made by the parties of the first part to the party of the second part, his heirs and assigns. The fire insurance policy to be transferred to the second party for his use and benefit. Premium of the policy to be given this day.

The court entered judgment for plaintiff on the case stated.

*Error assigned* was in entering judgment for plaintiff on the case stated.

*John M. Greers,* for appellant.—There was nothing to which the plaintiff's judgment could attach a lien: Kinports v. Boynton, 120 Pa. 306.

*J. W. Hutchison,* for appellee, cited: McMullen v. Wenner, 16 S. & R. 18; Fasholt v. Reed, 16 S. & R. 266; Stewart v. Coder, 11 Pa. 90; Kinports v. Boynton, 120 Pa. 306.

OPINION BY HEAD, J., October 5, 1906:

The paper-book of the appellant furnishes no satisfactory evidence that any action was ever begun in the court below. We find no abstract of the proceedings or copy of the docket entries as required by our rules. The only indication that such an action was actually brought is that the proceeding is assigned a particular number of a certain term of the said court. This may warrant us in assuming that the decree complained of is, in reality, the judgment of a court of law in an action therein pending, but it would certainly be more satisfactory to be furnished with proper record evidence of this important fact.

That a judgment entered against a vendor who has sold land by articles of agreement, but who still retains the legal title, becomes a lien against any estate remaining in the vendor evidenced by that title, is a proposition that cannot, we think, be disputed. The case of Kinports v. Boynton, 120 Pa. 306, cited and relied on by the learned court below, is but one of many kindred cases so holding, but, being clearly to the point, further citations are unnecessary. We do not think, however, that by merely establishing this broad proposition the plaintiffs demonstrate the correctness of the judgment now under consideration. Such a vendor may hold the legal title to the land for many different purposes. If the purchase money has all been paid by the vendee, prior to the entry of any judgment against the vendor, then the latter holds the legal title simply in trust for the former. He has no estate in the land and there remains in him nothing to which the lien of a judgment could attach. If, however, at the time of the entry of the judgment, the whole or any part of the purchase money remains unpaid and owing to the vendor, then the legal title represents an estate in him, the quantity and value of which are measured by the purchase money unpaid, to which the lien of the judgment will attach. Upon the extinction of that estate by the conveyance to the vendee of the legal title, the lien of the judgment will be transferred to the purchase money, and upon any distribution of

such money the judgment creditor will take precedence over junior-lien or unsecured creditors of the vendor. From a consideration of these principles we think it must be clear that if the vendor, either in the agreement of sale itself, or at any time thereafter but prior to the entry of the judgment, in good faith and for a lawful consideration to him moving, should assign and transfer to another, or to one in trust for a number of others, all of the unpaid purchase money, then again the legal title remaining in the vendor would be stripped of every incident and element of value to him and there would be nothing upon which the lien of a judgment against him could fasten. He would then hold but the naked legal title in trust for his vendee if the terms of sale were complied with, or for those who had succeeded to his own rights in the purchase money if it became necessary for them to use it to enforce those rights.

Thus it appears that the important question for our consideration is not, did the judgment of the plaintiffs, at the time of its entry, become a lien upon any estate in the land remaining in the vendor or any ownership in the purchase money, the equivalent of such estate? because this is conceded; but is, did the vendor, at the moment the judgment was entered, retain, in his own right and for his own use, any estate in the land or ownership in the purchase money, to which the lien of the judgment could attach?

In disposing of this question we are not embarrassed with any complications that might arise were there any allegation of fraud in the transaction. There is no claim that the sale price was less than a fair and full consideration for the property or that there was any design on the part of either vendor or vendee to in any way hinder or delay the creditors of the former. On the contrary, the whole of the purchase money was, by the express direction of the vendor, to be applied in payment or settlement of his debts, they being correctly classified into secured and unsecured, according to their legal status at that moment.

" An assignment of a chose in action or of a fund need not be by any particular form of words or particular form of instrument. . . . Any binding appropriation of it to a particular use, by any writing whatever, is consequently an assignment, or what is the same, a transfer of the ownership; and that it

may be effected by a letter of attorney to collect and distribute, so as to be good against an attachment by particular creditors, was ruled by this court in the United States v. Vaughan, 3 Binn. 394, etc. : " Watson v. Bagaley, 12 Pa. 164.

" None of the acts of assembly relating to assignments for the benefit of creditors have required that they should be drawn in any specific form. Such instruments were well known and in common use when the act of March 24, 1818, was passed. And neither before nor after its passage was any particular collocation of words held necessary to give to a writing the effect of an assignment. Since 1818 property transferred to one person to be employed, paid over or converted for the benefit of others, has been regarded as property held in trust within the operation of the statutes : " Wallace v. Wainwright, 87 Pa. 263.

Did it appear as a fact in this case that the disposition of the purchase money made by the vendor was on account of "insolvency" or his "inability to pay his debts," it would seem that every essential element of an assignment for the benefit of creditors was present in the writing executed and delivered on April 26, 1905, which was regularly recorded within the time prescribed by the statute for the recording of such instruments. Had this cause been tried before a jury they might have been warranted in inferring such insolvency or inability from the other facts which do appear. But, dealing as we are with a case stated, such inferences may not be made by the court. We have no right to assume or infer the existence of any fact not stated and agreed on by the parties: Diehl v. Ihrie, 3 Whart. 143 ; City of Chester v. Traction Co., 4 Pa. Superior Ct. 575.

But whilst we might hesitate for the reason indicated to pronounce the paper under consideration an assignment for the benefit of creditors within the meaning of the statutes, we can see no good reason to doubt that it amounted to a special assignment of the purchase money due the vendor, to the vendee, to be by him applied to the use and benefit of the persons and firms named therein.

The vendor was entirely competent to make such an assignment. Having provided for the payment in full of all the debts which were liens on his title, he could dispose of the

balance of the purchase money as he chose.   To transfer it to
creditors who were in no position to seize it was not only in no
way illegal, but was a praiseworthy discharge of a moral obli-
gation.   This obligation was a good consideration to the as-
signor.   If, then, we have competent parties for assignor and
assignee, and a written agreement between them; if we have a
good consideration moving to the former inducing its execu-
tion; if we find the instrument after execution was delivered
to, received and placed on record by the other party; if we
find the subject-matter of that agreement to be property that
will pass by assignment; if the paper contain a clear and dis-
tinct direction from a vendor to a vendee to appropriate and
apply purchase money to the use and benefit of persons other
than the vendor, to wit: his creditors; and if the law be that
"any binding appropriation of it (purchase money) to a par-
ticular use, by any writing whatever, is an assignment"—upon
what theory can we reach any other conclusion than that the
paper, now under consideration, amounted to an assignment?

Can it be said, however, that even if the paper amounts to
an assignment it is executory only and revocable at the will
of the assignor, thus leaving it in his power to reinvest himself
with the full ownership of the fund?

As already stated there was a good consideration to support
his act in transferring this money to a trustee for the use of
the persons named who were creditors.   In Watson v. Bagaley,
12 Pa. 164, Chief Justice GIBSON, after stating the question
raised as to the power of the maker or assignor to revoke the
paper held to amount to an assignment, says: " The solution of
it is that a letter of attorney is not revocable after it has been
executed; and here the money was collected and ready for dis-
tribution according to the term of the trust.   The services of
the trustees, in the execution of it, was a consideration for an
agreement which would have prevented the donor of the power
from retracting it had he been disposed to do so.   The con-
sideration of trouble was certainly as potential as the trifling
pecuniary one inserted in formal assignments."

In the present case we not only have the trustee accepting
the trust, with the money in his hands ready for distribution
according to its terms, but the agreement contains an express
assumption by him of all the debts that were liens, amounting

to about $1,200, thus adding his personal liability to the security previously held by the lien creditors. We also know from the record that the trustee has already in part executed the trust by paying to the present plaintiffs the share due to them under the terms of the assignment. True, the mere acceptance of this money does not estop them pursuing any other remedies which, as creditors, they may have because they stipulated it should not do so. But it would estop the assignor, on whose rights they must stand, from revoking his assignment if he otherwise had the right to do so. We cannot think, under the conditions shown by the record to have existed when the judgment was entered, the defendant therein could have revoked or repudiated his agreément and maintained an action against the trustee to recover, for his own use and benefit, the unpaid purchase money or any part of it. If he could not it is difficult to see how the present plaintiffs, whose rights rise no higher than those of their judgment debtor, have acquired any right to a larger share in the fund than was given to them by the terms of the assignment made by the vendor.

If in reality there be, as contended, any uncertainty in the language of the instrument as to the identity of the beneficiaries thereunder or the exact amount to be received by each, or the conditions, if any, upon which they are to receive it, these are questions that primarily interest the trustee. We can only assume at this time, as the plaintiffs must, that the trust will be fairly and properly executed according to its terms. If indeed, when so executed, there remains in the hands of the trustee any portion of the fund which the vendor, were it not for the judgment of the plaintiffs, could rightfully claim and recover, then, as to that portion of the fund, the lien of the judgment would attach and the plaintiffs would secure it. For the reasons indicated we are of opinion the court below was wrong in entering judgment for the plaintiffs.

Judgment reversed and judgment on the case stated is now entered in favor of the defendant; the costs of this appeal to be paid by the appellees.